Filed 8/1/14  P. v. Barahona CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057558 |
| v. | (Super.Ct.No. RIF1102346) |
| ADOLFO JOSE MORALES BARAHONA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed with directions.

J. Courtney Shevelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Adolfo Jose Morales Barahona of first degree murder (Pen. Code, § 187, subd. (a)),[1] and found true special circumstance allegations that defendant committed the murder while engaged in the commission of the crimes of robbery and burglary (§ 190.2, subd. (a)(17)(A), (a)(17)(G)). The trial court sentenced defendant to life without the possibility of parole.

In this appeal, defendant maintains that insufficient evidence supports his conviction for felony murder. According to defendant, no evidence demonstrated that he formed the intent to commit robbery or burglary before he killed the victim. Defendant also maintains the evidence failed to establish that the victim's murder and the commission of the felonies occurred in one continuous transaction. Defendant finally contends we must strike the parole revocation fine the trial court imposed under section 1202.45 because his sentence does not include a period of parole.

The People concede the latter contention, and we will order the fine stricken. In all other respects, we reject defendant's contentions and conclude that ample evidence supports the jury's finding that defendant murdered the victim during his commission of robbery and burglary. Accordingly, the judgment will be affirmed as modified.

## I. Factual Background

Ilma Saucedo, the victim in this case, owned a home in Riverside and rented out two rooms. Defendant, Saucedo's unemployed nephew, periodically stayed with his

---

[1] All further statutory references will be to the Penal Code unless otherwise noted.

aunt, sleeping in the living room. Saucedo owned a truck, which she drove regularly, and a gold Honda Accord. Defendant was not permitted to drive Saucedo's vehicles.

On February 11, 2011, Saucedo went to work. Her shift ended a little early that day, and Saucedo stopped by the bank to deposit her paycheck. Saucedo arrived at her house around 12:30 p.m., though she normally did not get home until after 1:00 p.m. Candelario Ramirez Orenda, one of Saucedo's renters, saw her arrive at 12:30 p.m., just as Orenda was leaving for work. Defendant was home at that time, standing by the front door. Saucedo told Orenda good-bye as he was leaving.

When Orenda returned about 9:30 p.m. that evening, no one was home. Orenda saw two beer glasses sitting in the kitchen, only one of which had been cleaned. This was unusual because Saucedo was always very neat and tidy, and never left unwashed dishes sitting out before she left her home. Orenda also saw Saucedo's work uniform right inside the front door, and her shoes outside her bedroom door. Orenda had never seen Saucedo leave her shoes outside her bedroom before. Saucedo's bedroom door was closed and locked, as it normally was. Neither Orenda nor anyone else ever saw or heard from Sauecdo again.

Shortly after her disappearance, Saucedo's close friends, members of the Padilla family, grew concerned about her. Saucedo had been scheduled to attend a family birthday party at the Padilla home on February 12, 2011. She failed to appear or notify the Padillas she would be unable to attend, which was completely unlike Saucedo's

3

normal reliable behavior. The Padillas repeatedly tried to contact Saucedo, without success.

Lydia Padilla, Saucedo's goddaughter, called defendant to ask about Saucedo, and defendant stated that she had gone to Guatemala to care for her sick mother. Saucedo had told no one of any plan to go to Guatemala, and she had not requested any time off from her job. Saucedo had never before missed work without notice. Defendant ignored additional repeated calls from the Padillas, until Lydia called defendant from a blocked number. When defendant finally answered, he said he had no contact information for Saucedo. Defendant told Lydia that Saucedo was in Guatemala, and that was all she needed to know.

Several weeks after Saucedo disappeared, defendant called Orenda and tried to collect the rent money from him. Defendant also told Orenda to collect the rent from Saucedo's other tenant, Guillermo Aguilar Zamora, and give it to defendant. Orenda declined to pay unless Saucedo first called him and authorized defendant to collect the rent money.

Defendant then asked for the rent from Zamora in person. Defendant told Zamora that Saucedo was in Guatemala because her mother was ill, and she had asked him to collect the rent. Zamora gave defendant $400, and defendant provided $50 in change from a stack of bills in his wallet. Zamora noticed that defendant appeared to be loading items into Saucedo's Honda, which was parked in the driveway. The garage door was open, though Saucedo had never allowed anyone access to her garage.

4

In late February or early March, the Padilla family forced Saucedo's locked bedroom door open, and discovered the room had been ransacked. The Padillas immediately called the police. Saucedo's purse and wallet were still in her room, though all the cash had been removed. Her driver's license and credit cards were still inside her wallet. Saucedo's valid passport was also discovered inside her room. Saucedo kept a safe inside her closet, which normally contained at least $2,000 in cash. Police found the safe door closed, but the safe contained no cash.

For months prior to Saucedo's disappearance, defendant engaged in an online relationship with Paola Garcia, a young woman who lived in Bakersfield. Defendant repeatedly promised to come and visit Garcia, but had always failed to do so prior to February 12, 2011. Defendant sent Garcia a text on February 9, 2011, which read: "Just missing you crazy, crazy." Garcia asked defendant to buy her an expensive cell phone for Valentine's Day.

Defendant missed another potential meeting with Garcia on February 11, 2011. On February 12, defendant texted Garcia: "Hey, do you want to buy a cell today? It got late yesterday because I had an accident. But I'm about one hour and 30 from Bakersfield." When Garcia responded with skepticism, defendant texted: "Really, Girl, yesterday I had an accident." Later that day, defendant picked up Garcia in Saucedo's Honda Accord, claiming he had purchased the vehicle. Defendant never elaborated on what type of accident he had been involved in the day before, though Garcia saw a gun in the glove box. Defendant bought Garcia a $500 cell phone, and paid for it with cash.

5

Defendant was arrested in Bakersfield on April 2, 2011, while he was driving Saucedo's car. Defendant said his name was Yahir Guzman, and he claimed that he had purchased the vehicle in Los Angeles. Defendant stated he had never lived in Riverside, and did not have any family in the United States. Defendant claimed he did not know Saucedo.

Defendant eventually recanted large portions of his original statements to the police. He admitted his true name, that he was related to Saucedo, and that the Honda he was found driving was her car, though he continued to claim that he had purchased the vehicle in Los Angeles. Defendant claimed Saucedo was like a "mother" to him, yet he did not react with any emotion or concern when informed of her disappearance. When told that the police knew defendant took Saucedo's car at the same time she disappeared, defendant did not respond. Defendant also said nothing when asked why he tried to get rent money from Saucedo's housemates and when asked if something had happened to Saucedo. Defendant denied that he had ever used Saucedo's cell phone, though phone records indicate the victim's phone was used to make calls in Bakersfield on February 12 and 13, 2011.

Saucedo's body was never found, and no evidence established how she died. Defendant did not testify at trial, and the defense presented no affirmative evidence.

## II. Discussion

A. *Applicable Law*

We are limited in our review of a claim of insufficiency of the evidence. We assess the sufficiency of evidence by reviewing the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 319-320 [61 L.Ed.2d 560, 99 S.Ct. 2781].) "Given this Court's limited role on appeal, defendant bears an enormous burden in claiming there is insufficient evidence to sustain his [criminal] convictions. If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves." (*People v. Veale* (2008) 160 Cal.App.4th 40, 46 [Fourth Dist., Div. Two], citing *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Rather, all reasonable inferences must be drawn in support of the judgment. (*People v. Wader* (1993) 5 Cal.4th 610, 640.)

"The standard of . . . review is the same in cases in which the People rely primarily on circumstantial evidence." (*People v. Bean* (1988) 46 Cal.3d 919, 932.) If the circumstances reasonably justify the jury's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the conviction. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) "'"Circumstantial evidence may be sufficient to connect a defendant with the

crime and to prove his guilt beyond a reasonable doubt.""'" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

A murder committed in the perpetration of either burglary or robbery is first degree felony murder. (§ 189; *People v. Cavitt* (2004) 33 Cal.4th 187, 197.) Burglary is committed when a "person . . . enters any house, room, apartment, . . . or other building, . . . with intent to commit grand or petit larceny or any felony . . . ." (§ 459; *People v. Montoya* (1994) 7 Cal.4th 1027, 1041.) Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166.) The mental state required for felony murder is the specific intent to commit the underlying felony. (*People v. Cavitt, supra*, at p. 197.)

For purposes of felony murder, a homicide occurs in the perpetration of the felony if both offenses were part of a continuous transaction, regardless of whether there is a strict causal or temporal relationship between the offenses. (*People v. Prince* (2007) 40 Cal.4th 1179, 1259.) Thus, so long as the felony is not merely incidental to the killing or an afterthought to it, the killing may be felony murder even if it did not occur in the midst of the commission of the felony. (*Ibid.*) Circumstantial evidence may suffice to support a felony murder conviction, and specifically to establish the defendant's intent. (*Id.* at p. 1260; see also *People v. Castaneda* (2011) 51 Cal.4th 1292, 1324-1326 [jury reasonably concluded defendant's intent to steal was formed before the victim's death based upon

defendant's strong motive and need for money]; *People v. Navarette* (2003) 30 Cal.4th 458, 499 [same].)

If the evidence shows a defendant's intent to steal only arose after the use of force, the taking will only constitute a theft. (*People v. Burney* (2009) 47 Cal.4th 203, 253.) Intent to steal is rarely demonstrated by direct proof, but is often proved by circumstantial evidence. (*People v. Abilez* (2007) 41 Cal.4th 472, 507-508.) One such circumstance, the theft of property from a dwelling, may create a reasonable inference of an intent to commit theft at the time of entry. (*People v. Lewis* (2001) 25 Cal.4th 610, 643.) "'[W]hen one kills another and takes substantial property from the victim, it is ordinarily reasonable to presume the killing was for purposes of robbery.'" (*People v. Kelly* (1992) 1 Cal.4th 495, 529, citing *People v. Turner* (1990) 50 Cal.3d 668, 688.) Murders are commonly committed to obtain money. (*People v. Marshall* (1997) 15 Cal.4th 1, 35.)

"'"[W]hen a person is shown to be in possession of recently stolen property slight corroborative evidence of other inculpatory circumstances which tend to show guilt supports the conviction of robbery."'" (*People v. Hughes* (2002) 27 Cal.4th 287, 357, quoting *People v. Mulqueen* (1970) 9 Cal.App.3d 532, 542.) For purposes of a burglary special circumstance, a defendant's possession and subsequent profit from property stolen from a victim's home shortly after the crime is strong circumstantial evidence that he harbored the intent to commit larceny when he entered the home. (*People v. Abilez, supra*, 41 Cal.4th at pp. 507-508, citing *People v. Yeoman* (2003) 31 Cal.4th 93, 131.)

9

B. *Sufficiency of Evidence for the Murder Verdict and Special Circumstance Findings*

Defendant properly concedes that the prosecution circumstantially proved Saucedo's death by demonstrating evidence of her abrupt and unexplained disappearance. (See, e.g., *People v. Ruiz* (1988) 44 Cal.3d 589, 610-611 ["ample circumstantial evidence of [victim's] death by foul play [found in] her abrupt disappearance, her failure to contact friends, relatives, her physician and her pastor, her failure to seek resumption of Medi-Cal and Social Security payments, and her abandonment of several personal effects, including her purse."].) However, defendant maintains the evidence was insufficient to establish he committed felony murder because no evidence showed that he formed the intent to commit robbery or burglary before the killing, or that the crimes were part of a continuous transaction.[2] We reject defendant's contentions, and conclude ample evidence supports the jury's findings that defendant killed Saucedo while engaged in the commission of robbery and burglary.

Initially, we note the trial court's denial of defendant's section 1118.1 motion,[3] which was raised following the conclusion of the prosecution's case. Although defendant

---

[2] Defendant does not challenge the adequacy of the trial court's instructions, which included CALCRIM No. 540A, requiring that the defendant must have "intended to commit the felony of robbery and/or a burglary before or at the time that he caused the death," and CALCRIM No. 549 which required the People to prove, and the jury to conclude, that the robbery, burglary, and murder be part of one continuous transaction. CALCRIM No. 549 additionally instructed the jury that "[t]he continuous transaction may occur over a period of time and in more than one location."

[3] As relevant here, section 1118.1 provides: "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry

*[footnote continued on next page]*

10

has not specifically challenged the trial court's ruling, in determining whether the evidence was sufficient to sustain a conviction, or to support the denial of a section 1118.1 motion, the standard of review is essentially the same.  (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)  In denying defendant's motion, the trial court stated:

"So I think the circumstantial evidence is strong in favor of the fact that the victim is decease[d], and that the defendant was the criminal agency involved.  Certainly, the property and the ransacking of the bedroom does appear to be consistent with a burglary.  The robbery is a little bit more of a stretch only because there isn't any evidence that [the property] was taken by force or fear.  But, again, looking at the way the room was disheveled and the fact that, apparently, Ms. Saucedo no longer is alive, I think, again circumstantially there could be [an] inference the property was taken by force or fear.  I can't imagine that anything but for that, the force, . . . being whatever criminal agency was utilized in order to kill her, and then, of course, the taking of the property.

"So for those reasons, the Court does believe that a reasonable jury could convict the defendant on Count 1 and on the allegation of such special circumstances that are attached thereto, and that such a conviction will be sustained on appeal."

We concur with the trial court's reasoning.  The prosecution's evidence directly points to defendant's formation of a plan to burglarize and rob Saucedo, as opposed to

---

*[footnote continued from previous page]*
of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal."

11

defendant possessing any independent murderous intent. Defendant's relationship with Saucedo was not contentious, although Saucedo wished her nephew would get a job. Zamora never saw her arguing with defendant. Defendant described his relationship with Saucedo as "mother/son."

Defendant's anticipated romance with Garcia provided him with a strong motive—defendant needed a car to visit Garcia in Bakersfield, and money in order to be able to buy her the promised cell phone. Defendant, who was unemployed, did not have a car of his own, and Saucedo did not permit defendant to drive her vehicles.

Evidence presented concerning the last time anyone ever saw or heard from Saucedo additionally supports the jury's conclusion that defendant killed Saucedo to accomplish the theft. Saucedo's renter, Orenda, saw defendant coming out of the home just as Saucedo arrived home from work at 12:30 p.m. on February 11, 2011. Saucedo entered the home and changed out of her uniform, placing it where she normally did. The jury could reasonably conclude defendant had not yet ransacked Saucedo's bedroom since Saucedo would have noticed the damage before she changed her clothes. The beer mugs in the kitchen support an inference that defendant had a drink with Saucedo, and that she had time to clean her glass. The jury could reasonably assume that sometime after they consumed the drinks, defendant ransacked Saucedo's bedroom and stole her money. As the trial court noted, it would have required force or fear for defendant to take Saucedo's money while she was present, supporting an inference that defendant robbed Saucedo. We conclude sufficient evidence exists to show defendant killed the victim

12

while engaged in the commission of robbery and burglary. The jury could have reasonably concluded that defendant's intent to steal was formed before Saucedo's death based upon the facts that defendant was unemployed and had no car, and needed money and a vehicle to visit Garcia in Bakersfield and buy her the promised cell phone. (*People v. Navarette, supra,* 30 Cal.4th at p. 499 [a robbery cannot occur after a victim is dead; however, one can rob a living person by killing him and taking his property]; see also *People v. Castaneda, supra*, 52 Cal.4th at pp. 1324-1326 [jury's true findings on both robbery and burglary special-circumstance allegations supported by evidence that defendant's strong need for money preceded the victim's murder].) The evidence established defendant took the victim's car without her permission immediately after Saucedo was last seen. Defendant thereafter promptly drove to Bakersfield and bought Garcia a cell phone, which he paid for with cash. These facts further establish defendant's crimes occurred as part of one continuous transaction.

Defendant's actions and behavior were not incidental or ancillary to Saucedo's murder, but amply demonstrate his independent felonious purpose in support of the robbery and burglary-murder special circumstances. (*People v. Abilez, supra*, 41 Cal.4th at pp. 511-512.) We conclude that substantial evidence supports defendant's murder conviction and the special circumstance findings.

### III. Parole Revocation Fine

At the sentencing hearing, the trial court imposed a suspended parole revocation fine of $10,000 under section 1202.45. Defendant contends that such a fine is improper

13

under *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1183. The People concede this issue, and we accept their concession. We agree section 1202.45 does not apply and that the fine must be stricken because defendant's sentence does not include the possibility of parole. We will, therefore, order the fine stricken and the abstract of judgment modified to so reflect. (*People v. McWhorter* (2009) 47 Cal.4th 318, 380.)

## IV. Disposition

The parole revocation fine imposed under section 1202.45 is stricken. The trial court is directed to modify the abstract of judgment accordingly and forward a copy of the modified abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

CODRINGTON
J.

14