Filed 10/23/14  P. v. Guzman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058456 |
| v. | (Super.Ct.No. RIF1102483) |
| JOSE WILSON ROJAS GUZMAN, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elisabeth Sichel, Judge. Affirmed.

Laura Schaefer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and A. Natasha Cortina and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury found defendant and appellant Jose Wilson Rojas Guzman guilty of committing five sex offenses against three girls under the age of 14 years, namely, Does 1, 2, and 3. Defendant was sentenced under the "One Strike" law (Pen. Code, § 667.61)[1] to life without the possibility of parole on count 1 and 25-year-to-life terms on counts 4 and 5. He was sentenced to four years on count 2 and one year on count 3, both terms to run consecutive to count 1.

Defendant claims the trial court abused its discretion and violated his due process rights in allowing the prosecution to amend the information following the close of its case-in-chief to charge him with assaulting Doe 1 with great bodily injury (§ 245, subd. (a)(1)) in lieu of her attempted murder, as originally charged. The amendment was allowed after the court indicated it would grant defendant's section 1118.1 motion to dismiss the attempted murder charge based on insufficient evidence of intent to kill. We find no abuse of discretion or due process violation in the allowance of the amendment. The evidence adduced at the preliminary hearing adequately notified defendant he could be charged with assaulting Doe 1 with great bodily injury, in lieu of or in addition to her attempted murder, and defendant had a fair opportunity to defend against the amended charge.

Defendant also claims (1) his conviction in count 3 for committing an attempted forcible lewd act (§§ 664, 288, subd. (b)(1)) on Doe 2 must be reversed because the jury

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

was inadequately instructed on the force or fear element of the crime; (2) he was unlawfully sentenced under the One Strike law (§ 667.61) on counts 1, 4, and 5 because he was not convicted of any qualifying offenses; and, finally, (3) a $200 parole revocation fine was improperly imposed, given his life sentence without the possibility of parole. We also find these claims without merit, and affirm the judgment.

## II. FACTS AND PROCEDURAL HISTORY

A. *The Sexual Assault of Doe 1 (May 7-8, 2011)*

On May 7, 2011, around 9:00 p.m., nine-year-old Doe 1's mother went to work, leaving Doe 1 and her brother and sister home alone in the family's apartment. After falling asleep, Doe 1 woke to a man, later identified as defendant, covering her mouth, telling her to be quiet. Doe 1 recalled little about what happened next; she recalled only that the man carried her out of her apartment, took her to his apartment, placed her on a bed, and began strangling her. She fell asleep again and awoke as defendant left her lying in a grassy area near a residential street, in the middle of the night, more than two miles from her apartment.

Feeling dizzy and confused, Doe 1 knocked on doors in the neighborhood where defendant left her, looking for help. She told a woman she was lost and did not recall how she got there. The police were called and Doe 1 was taken to the hospital. She had extensive injuries, including severe vaginal and anal tears requiring surgery. She also had a broken hyoid bone in her throat and petechial hemorrhages on her scalp, ears, neck, throat, upper chest, and back arms, all consistent with having been strangled. The

3

petechial hemorrhages in the back of her throat were consistent with forced oral copulation.

At Doe 1's apartment, police found an open window and its screen was propped against the exterior wall. Defendant's fingerprints were on the apartment front doorknob and bathroom doorknob. A surveillance camera at Doe 1's apartment complex showed a man in dark clothing walking up the stairs toward Doe 1's apartment, then walking down the stairs with Doe 1 in his arms. Months earlier, defendant rented a room in Doe 1's apartment and moved out two to three months before Doe 1 was abducted and sexually assaulted.

A surveillance camera at a residence near where Doe 1 was found showed a dark-colored truck driving with its headlights off, the same truck driving in the other direction approximately 10 minutes later, and Doe 1 looking for help. The next day, police detained defendant as he was driving a black Ford F-150 pickup truck. A replica of a handgun was found in the truck.

Defendant agreed to be questioned at the police station. While there, he drank from a styrofoam cup, and police extracted a DNA sample from the saliva on the cup. The DNA from the saliva on the cup matched DNA from defendant's blood sample and DNA from semen in Doe 1's anus. After the police collected the cup for evidence, defendant became visibly upset and said: "Oh, God. I asked for . . . that cup of water."

In defendant's apartment, police found four pairs of girls' underwear in the pocket of a sweatshirt, including the pair Doe 1 was wearing the night she was abducted. A

4

laptop computer in defendant's room contained thousands of pictures of preteen girls in sexually provocative poses, and defendant's cell phone showed multiple searches for Web sites with pictures of preteen children in sexually provocative poses. Doe 1's blood was found on a mattress in defendant's apartment.

B. *The Attempted Forcible Sexual Assault of Doe 2 (November 2008)*

In November 2008, 12-year-old Doe 2 woke to a man kneeling at the foot of her bed. The man told her to "shush," threatened to shoot her father if she made a noise, pulled down her pajama pants and underwear, and placed a gun against her. She pushed the man off of her, ran out of the room, and called for her father as the man ran after her, waving the gun.

Doe 2's father heard Doe 2 screaming and saw someone jumping out of the living room window. Police found three fingerprints matching defendant's fingerprints around the open living room window, and the window screen was propped against the side of the house.

C. *The Forcible Sexual Assault of Doe 3 (September 2008)*

In September 2008, 12-year-old Doe 3 woke and saw a man in her bedroom wearing dark clothing. The man pulled on her legs and she tried to kick him away. He pulled her shorts and underwear off, licked her vagina, and turned her over and tried to get on top of her. Doe 3 screamed for her father, and the man said he was her father. The man put his finger into her anus and her vagina as he kissed her buttocks. He tried to put his penis in her mouth, but she resisted.

5

Doe 3 screamed for her father again, and the man began strangling her. After she continued to resist, the man left. Doe 3 woke her family and the police were called. Doe 3 was taken to the hospital and had overstretched tissues in her genital area, consistent with having been sexually assaulted. Defendant's DNA matched DNA in saliva on Doe 3's buttocks. Outside Doe 3's house, the police found an open bathroom window with its screen removed.

D. *The Amended Information*

As indicated, at the close of the prosecution's case, the court indicated it would grant defendant's section 1118.1 motion to dismiss the charge in count 3 of attempting to murder Doe 1 based on insufficient evidence defendant intended to kill Doe 1. Immediately thereafter, however, the court granted the prosecution's motion to amend count 3 to charge defendant with assaulting Doe 1 with great bodily injury (§ 245, subd. (a)(1)) in lieu of the attempted murder charge.

Additionally, the court allowed the prosecution to amend count 4 to charge an *attempted* forcible lewd act on Doe 2 (§§ 664, 288, subd. (b)(1)), rather than a (completed) forcible lewd act, as previously charged.[2] Two other counts were dismissed, and the prosecutor filed an amended information.

---

[2] In opposing the amendment to count 3, defense counsel said she was about to move to dismiss count 3 (§ 1118.1) because there was insufficient evidence defendant *used force* in pulling Doe 2's pajama pants and underwear down—that is, there was insufficient evidence defendant used more force than was necessary to pull down the pajama pants and underwear. The prosecutor pointed out that even if there was insufficient evidence of force, defendant used fear when he placed a gun, or a replica of a gun, next to Doe 2 and threatened to shoot her father if she was not quiet. The prosecutor

*[footnote continued on next page]*

6

The amended information charged defendant in five counts: aggravated sexual assault of Doe 1 by means of forcible sexual penetration (§§ 269, subd. (a)(5), 289, subd. (a); count 1), assault with great bodily injury on Doe 1 (§ 245, subd. (a)(1)); count 2), attempted forcible lewd act on Doe 2 (§§ 664, 288, subd. (b)(1); count 3), aggravated sexual assault of Doe 3 by means of forcible oral copulation (§§ 269, subd. (a)(4), 288a, subd. (c)(2) or (3) or subd. (d); count 4), and aggravated sexual assault of Doe 3 by means of sexual penetration (§§ 269, subd. (a)(5), 289, subd, (a); count 5). One Strike law sentencing enhancements were alleged in counts 1, 4, and 5. (§ 667.61.)

E. *Verdicts and Sentencing*

The jury found defendant guilty as charged in counts 1 through 5 of the amended information, and found the One Strike allegations on counts 1, 4, and 5 true. Defendant was sentenced to life without parole on count 1, consecutive 25-year-to-life terms on counts 4 and 5, four years on count 2, and one year on count 3, consecutive to count 1. The court imposed but stayed a $200 parole revocation fine. (§ 1202.45.)

---

*[footnote continued from previous page]*
conceded there was insufficient evidence that defendant touched Doe 2 in a lewd manner, and for that reason he moved to amend count 3 to charge an *attempted* rather than a completed lewd act by force or fear. The court allowed the amendment, finding "the fear issue with the gun" sufficient to satisfy the force or fear element.

III.  DISCUSSION

A.  *The Information Was Properly Amended to Replace the Attempted Murder Charge with an Aggravated Assault Charge Against Doe 1*

Defendant claims the trial court abused its discretion and violated his due process rights in allowing the prosecutor to amend the information, following its case-in-chief, to charge him with assaulting Doe 1 by means of force likely to produce great bodily injury in count 2 (formerly count 3), in lieu of her attempted murder.  In allowing the amendment, the court noted the assault charge would not "really be a surprise to the defense given the nature of [Doe 1's] injuries."  Defense counsel objected, stating:  "I'd just formally object on the record that the jury has already been read the Information at the outset."

"Due process requires that 'an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.'  [Citation.]  Thus, it is the rule that 'a defendant may not be prosecuted for an offense not shown by the evidence at the preliminary hearing or arising out of the transaction upon which the commitment was based.'  [Citations.]"  (*People v. Graff* (2009) 170 Cal.App.4th 345, 360.)

"In accordance with this rule, our Supreme Court has interpreted sections 739 and 1009 to '"permit amendment of the information to add charges . . . which are supported by the actual evidence at the preliminary hearing, provided the facts show due notice by proof to the accused."  [Citations.]'  [Citations.]  'Under section 739, "[t]he law is settled

8

that unless the magistrate makes factual findings to the contrary, the prosecution may amend the information after the preliminary hearing to charge any offense shown by the evidence adduced at the preliminary hearing provided the new crime is transactionally related to the crimes for which the defendant has previously been held to answer." [Citations.] "Under the case law interpreting section 1009, the test applied is whether or not the amendment changes the offense charged to one not shown by the evidence taken at the preliminary examination. [Citation.]" [Citation.]'" (*People v. McCoy* (2013) 215 Cal.App.4th 1510, 1531.)

We review the court's accession to an amendment to the information, including the addition of counts, for an abuse of discretion. (*People v. Arevalo-Iraheta* (2011) 193 Cal.App.4th 1574, 1581 [Fourth Dist., Div. Two].) Here, there was no due process violation or abuse of discretion. At the preliminary hearing, Riverside Police Detective Roberta Hopewell testified she interviewed Doe 1, who recalled being awakened by a man who carried her away and "chok[ed]" her. Detective Hopewell also spoke with medical professionals who examined Doe 1 after she was taken to the hospital and described the severe vaginal tearing she suffered, all the way to her anus, and the petechial hemorrhages on her scalp, neck, and upper body. The detective also testified that DNA and other evidence identified defendant as the person who abducted and sexually assaulted Doe 1.

All of this evidence was presented in the prosecution's case-in-chief, before the court allowed the amendment. As the court pointed out, the aggravated assault charge

9

was not "a surprise to the defense given the nature of [Doe 1's] injuries." Indeed, the new charge was not a surprise to defendant given all the evidence adduced at the preliminary hearing and at trial.

Defendant argues the court abused its discretion in allowing the amendment simply because assault by means of force likely to produce great bodily injury is not a lesser included offense of attempted murder. But this does not mean there was an abuse of discretion or due process violation. The aggravated assault charge was shown by the evidence taken at the preliminary hearing (§ 1009) and was transactionally related to the attempted murder charge (§ 739). Further, defendant had adequate notice and opportunity to defend against the aggravated assault charge, based on the evidence taken at the preliminary hearing, and no evidence was presented during trial that was substantially different from the evidence presented at the preliminary hearing.

B. *The Failure to Instruct on the Force or Fear Element of Attempted Forcible Sexual Assault of a Child in Count 3 (§ 288, subd. (b)(1)) Was Harmless*

Defendant next claims the trial court prejudicially erred in failing to instruct the jury that it had to find he acted with force or fear in order to convict him of the attempted forcible sexual assault of Doe 2 in count 3 (§§ 664, 288, subd. (b)(1)), requiring reversal of count 3. We agree there was error, but conclude it was harmless beyond a reasonable doubt. No reasonable juror could have found defendant guilty in count 3 without finding he attempted to commit a lewd act on Doe 2 *by fear*—specifically by placing a gun against her and threatening to shoot her father unless she was quiet.

10

1. Relevant Background

On count 3, the court instructed the jury pursuant to CALCRIM No. 1110 on the elements necessary to prove a lewd and lascivious act on a child under 14 years of age. (§ 288, subd. (a).)  But rather than give CALCRIM No. 1110, the court should have given CALCRIM No. 1111, the pattern instruction on the elements of a lewd act on a child under 14 years of age, "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ."  (§ 288, subd. (b)(1).) CALCRIM No. 1110 did not identify force or fear as an element of the attempted, forcible lewd act charge in count 3.

2. Applicable Law and Analysis

"'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'  [Citation.]  '"The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole."'  [Citation.]" (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)  We review the legal adequacy of jury instructions de novo.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.)

The People argue the entire charge to the jury adequately instructed it on the force or fear element necessary to prove the attempted forcible lewd act charge involving Doe 2 in count 3.  The People point out that the court gave CALCRIM No. 1123, defining the element of force of fear for purposes of counts 1, 4, and 5, which charged defendant with aggravated sexual assault on a child under 14 years of age; the jury was instructed to

11

consider all of the instructions "together"; in closing argument, the prosecutor told the jury that in order to convict defendant in count 3 it had to find he attempted to commit a lewd act on Doe 2 by "force, violence, duress, or fear"; and the verdict form in count 3 referred to the force or fear element. It stated: "We, the jury, find the defendant _____ *[insert GUILTY or NOT GUILTY in blank]* of **Attempted Lewd Act by Force upon Jane Doe 2,** within the meaning of Penal Code section 664/228(b)(1), as charged in Count 3." The jury returned the verdict form, finding defendant guilty.[3]

We disagree that the entire charge adequately instructed on the force or fear element in count 3. As defendant points out, "force, violence, duress, or fear," was not defined for purposes of count 3; it was only defined for purposes of counts 1, 4, and 5. Further, the jury was instructed pursuant to CALCRIM No. 200 that if it believed the arguments of counsel conflicted with the court's instructions, it had to follow the court's instructions. And here, the prosecutor's argument that the jury had to find defendant attempted to commit a lewd act by force or fear, in count 3, conflicted with the court's instructions on count 3.

---

[3] The People also argue that the trial court read the information to the jury, at the outset of trial, stating in part that defendant was charged in count 3 with "[a] violation of Penal Code section 664/228, subdivision (b), subsection (1), a felony, in that . . . he did attempt to willfully, unlawfully, and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of Jane Doe #2, a child under the age of fourteen years, *by use of force, violence, duress, menace, and fear of immediate and unlawful bodily injury* . . . ." (Italics added.) Contrary to the People's assertion, the record on appeal does not indicate that this charge was read to the jury verbatim, as charged in the information.

12

Still, the error was harmless beyond a reasonable doubt.  Instructional error that omits an element of an offense requires reversal, unless it appears beyond a reasonable doubt that the error did not contribute to the verdict.  (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Flood* (1998) 18 Cal.4th 470, 504.)  The question "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279; see *People v. Flood, supra,* at p. 515.)  But "instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' [Citations.]" (*People v. Mil* (2012) 53 Cal.4th 400, 417, quoting *Neder v. U.S.* (1999) 527 U.S. 1, 17.)

Doe 2 testified she woke to a man, later identified through DNA evidence as defendant, kneeling at the foot of her bed who told her to "shush," threatened to shoot her father if she made a noise, pulled down her pajama pants and underwear, and placed a gun against her.  Doe 2's testimony that defendant threatened to shoot her father was uncontested and overwhelming.

Defendant points out that Doe 2 could not recall exactly when the man threatened to shoot her father, or exactly when he put a gun, or a replica of a gun, against her— whether these acts occurred before or after the man pulled down her pajama pants and underwear.  But her failure to recollect these details made her testimony no less overwhelming; she clearly recalled that the man threatened to shoot her father around the

13

same time he crawled onto her bed, placed a gun, or a replica of a gun against her, and pulled down her pajama pants and underwear. Thus here, the jury must have concluded defendant threatened to shoot Doe 2's father, and placed a gun or a replica of a gun against her, and that defendant accordingly *used fear* in attempting to commit a lewd act on Doe 2, in finding him guilty in count 3.

C. *Defendant Was Properly Sentenced Under the One Strike Law (§ 667.61)*

Defendant next claims he was unlawfully sentenced under the One Strike law (§ 667.61) on counts 1, 4, and 5, because he was convicted in those counts of violating section 269, subdivision (a)(4) and (5), rather than an offense listed in section 667.61, subdivision (c). He argues "the one strike law does not apply to section 269 convictions" but only to offenses listed in section 667.61, subdivision (c), and section 269 is not an offense listed in section 667.61, subdivision (c). We reject this claim.

Defendant was sentenced on count 1 to life without the possibility of parole under subdivision (j)(1) of section 667.61, and on counts 4 and 5 he was sentenced to 25-year-to-life terms under subdivision (a) of section 667.61. Subdivisions (a) and (j)(1) provide that "[a]ny person who is convicted of an offense specified in subdivision (c) . . . shall be punished [as provided in section 667.61]." Section 667.61, subdivision (c) states that "[t]his section shall apply to any of the following offenses," and goes on to enumerate these offenses in clauses (1) through (9).

In count 1, defendant was convicted of violating section 269, subdivision (a)(5) (aggravated sexual assault of child under age 14 and seven or more years younger than

14

defendant) by committing "sexual penetration" of Doe 1.  (Capitalization omitted.)

Section 269, subdivision (a)(5) is violated by committing "[s]exual penetration, *in violation of subdivision (a) of section 289*."  (Italics added.)  And "[s]exual penetration, in violation of subdivision (a) of Section 289" is the "offense" listed in section 667.61, subdivision (c)(5).

Likewise, defendant was convicted in count 4 of the aggravated sexual assault of Doe 3, by forcible oral copulation (§ 269, subd. (a)(4)) and in count 5 of the aggravated sexual assault of Doe 3 by sexual penetration (§ 269, subd. (a)(5)).  Section 269, subdivision (a)(4) is violated by a person who commits "[o]ral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a" against a child under the age of 14 and seven or more years younger than the person.  "Oral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of Section 288a" is the offense listed in section 667.61, subdivision (c)(7).  And, as indicated, section 269, subdivision (a)(5) is violated by a person who commits "[s]exual penetration, in violation of subdivision (a) of Section 289" against a child under the age of 14 and seven or more years younger than the person, and "[s]exual penetration, in violation of subdivision (a) of Section 289" is the offense listed in section 667.61, subdivision (c)(5).

Defendant's interpretation of section 667.61 is absurd, because it means that a person who commits an offense listed in section 667.61 subdivision (c) against a child under age 14 and seven or more years younger than the person, is not subject to

15

sentencing under the One Strike law, but a person who commits the same offense against a person 14 years of age or older, or less than seven years younger than the person, is to be sentenced under the One Strike law. Nothing in the language of section 667.61 supports this absurd interpretation, and defendant points to nothing in the legislative history of section 667.61 indicating it is what the Legislature intended. (*In re Greg F.* (2012) 55 Cal.4th 393, 406 [courts are to avoid interpreting statutes in a way that would produce absurd consequences the Legislature could not have intended].)

D. *The Parole Revocation Fine Was Properly Imposed*

Lastly, defendant claims the $200 stayed parole revocation fine must be stricken because he "was given a term of life without the possibility of parole [in count 1] and, therefore, his sentence does not include a period of parole." Defendant relies on *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1182, 1185-1186, where the court concluded a parole revocation fine must not be imposed on defendants whose aggregate sentences include life without the possibility of parole.

Section 1202.45, subdivision (a), provides: "In every case where a person is convicted of a crime *and his or her sentence includes a period of parole*, the court shall, at the time of imposing the restitution fine . . . assess an additional parole revocation restitution fine . . . ." (Italics added.) This additional parole revocation restitution fine shall be suspended unless the person's parole is revoked. The court in *Oganesyan* reasoned that "the language of section 1202.45 indicates that the overall sentence is the

16

indicator of whether the additional [parole revocation] restitution fine is to be imposed." (*People v. Oganesyan, supra,* 70 Cal.App.4th at p. 1185.)

The California Supreme Court took a different view of section 1202.45 in *People v. Brasure* (2008) 42 Cal.4th 1037 (*Brasure*), and effectively interpreted the statute as applying to defendants sentenced to any term that includes the possibility of parole. The court distinguished *Oganesyan* "as involving no determinate term of imprisonment imposed under section 1170, but rather a sentence of life without the possibility of parole for first degree special circumstance murder and an indeterminate life sentence for second degree murder." (*Brasure, supra,* at p. 1075.) Though the defendant in *Brasure* was sentenced to death, he was also sentenced to determinate terms (§ 1170) which, by law, the court reasoned, included the possibility of parole and a suspended parole revocation fine (§ 3000, subd. (a) (1), 1202.45; *Brasure, supra,* at p. 1075).

Like the defendant in *Brasure*, defendant's sentence includes determinate terms— four- and five-year terms on counts 2 and 3—and these carry with them the possibility of parole (§ 3000, subd. (a)(1)) and a suspended parole revocation fine (§ 1202.45; *Brasure, supra,* 42 Cal.4th at p. 1075). And like the defendant in *Brasure*, defendant "is in no way prejudiced by assessment of the [suspended parole revocation] fine, which will become payable only if he actually does begin serving a period of parole and his parole is revoked." (*Brasure, supra,* at p. 1075.)

## IV. DISPOSITION

The judgment is affirmed.

17

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____
J.

We concur:

HOLLENHORST _____
Acting P. J.

MILLER _____
J.