Filed 12/23/14  P. v. Chavira Ca2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR CHAVIRA,<br><br>    Defendant and Appellant. | 2d Crim. No. B247595<br>(Super. Ct. No. 2008032478)<br>(Ventura County) |

Victor Chavira appeals his conviction by jury of first degree murder with two special circumstances findings that he committed the murder in the commission of a robbery and while lying in wait (count 1; Pen. Code, §§ 187, subd. (a); 190.2, subd. (a)(17)(A); 190.2, subd. (a)(15).[1]  The jury also convicted  appellant of second degree robbery (count 2; §  211), two counts of exhibiting a firearm in the presence of another person (counts 3-4; § 417, subd. (b)), and dissuading a witness by force or threat (count 5; § 136.1, subd. (c)(1)).  On counts 1, 3, and 5, the jury found that appellant personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).

The trial court sentenced appellant to a determinate term of eight years eight months state prison plus 100 years to life,  plus two indeterminate terms of life

_____

[1] All statutory references are to the Penal Code.

without possibility of parole.  It ordered that the determinate sentence on counts 2 through 5 be served before the indeterminate sentence on count 1 for special circumstances first degree murder (§ 669, subd. (a)). [2]

We modify the judgment to reflect that appellant was sentenced as follows:  on count 1 (special circumstances, first degree murder), life without the possibility of parole plus 25 years to life on the firearm enhancement (§ 12022.53, subd. (d)); and a consecutive sentence of eight years eight months on counts 2, 3, and 5 plus 25 years to life on the count 2 firearm enhancement (§ 12022.53, subd. (d)). The determinate term shall be served first.  (§ 669, subd. (a).)  The 25-year-to-life firearm enhancement on count 5 is stricken because section 12022.53, subdivision (d) does not apply to the crime of dissuading a witness by force or fear.  Section 12022.5, subdivision (a) (personal use of a firearm during the commission of a felony), however, is a lesser included enhancement.  (*People v. Majors* (1998) 18 Cal.4th 385, 410; *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1397-1399.)  As to count 5, the judgment is modified to show an enhancement of three years pursuant to section 12022.5, subdivision (a).  The trial court is further directed to strike the $10,000 parole revocation fine (§ 1202.45).  (See *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185-1186 [section 1202.45 fine may not be imposed where sentence of life without possibility of parole is imposed].)  As modified, the judgment is affirmed in part and reversed in part.

*Facts and Procedural History*

Appellant, a drug middleman, shot Albino Ramirez in front of Ramirez's pregnant wife and son.  Appellant had told Ramirez that he could buy two pounds of

---

[2] The eight year eight month determinate sentence was calculated as follows:  a five-year upper term for robbery (count 2; § 211), plus eight months (one-third the midterm) for exhibiting a firearm in the presence of another person (count 4; § 417, subd. (b)), plus three years for dissuading a witness by force or threat (count 5; § 136.1, subds. (c)(1)).  The consecutive, three-year midterm sentence on count 5 was mandatory.  (See § 1170.15.)  On count 3 (§ 417, subd. (b)), appellant received an eight month sentence (one-third the midterm) that was stayed pursuant to section 654.

2

methamphetamine for $30,000 and directed Ramirez to pick him up at Wal-Mart. It was a ruse to murder and rob Ramirez. Ramirez got the money and drove to Wal-Mart with his wife, Celia Ramirez, and his son, Anthony.

Celia Ramirez and three-year old Anthony were in the back seat of the car when appellant killed Ramirez. Appellant also threatened to shoot Celia and Anthony. He ordered Celia to turn over the money and not to call 911 for 20 minutes.

Appellant was arrested that day and had $24,000 in his sock and $2,875 in his wallet. In a *Miranda* interview (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694]), appellant admitted shooting Ramirez and said "I was just cleaning up the city."

*Removal of Juror No. 1*

Appellant contends that the trial court violated his right to due process when it dismissed Juror No. 1 for misconduct. In jury voir dire, Juror No. 1 said that he was an engineer and that his work involved an "exacting standard, very focused and very precise." Juror No. 1 promised not to hold the prosecutor to such an exacting standard and acknowledged that the standard of proof was proof beyond a reasonable doubt.

At the conclusion of the trial, the jury was instructed on proof beyond a reasonable doubt (CALCRIM 220) and warned not to speculate on whether someone else was involved in the murder (CALCRIM 373).

The jury deliberated, asked for a read back of Celia's and appellant's testimony, and submitted written questions. In the first round of questions, the jury asked if it could consider whether Celia was involved in the murder and whether it could consider "the possibility that Celia and [appellant] worked together in Albino's killing. Does this . . . contradict with instruction [CALCRIM] 373 on page 30 of our instructions? " The trial court instructed the jury to reread CALCRIM 373.[3]

---

[3] CALCRIM 373 states in pertinent part: "The evidence shows that other persons may have been involved in the commission of the crimes charged against the defendant. There may be many reasons why someone who appears to have been involved might

3

On day three of deliberations, the jury reported that it could not reach a verdict on count 1 for first degree murder. The jury foreperson said the jury was deadlocked 11 to 1. Counsel agreed the jury should be sent back for further deliberations.

Before recessing for the day, the jury submitted three notes. The jury asked whether it could deliberate on second degree murder even though some of the jurors believed the killing was first degree murder with special circumstances. The second and third notes asked whether the gun shots to Ramirez's cheek caused death, whether it was robbery if Celia gave the $27,000 to appellant without duress, whether Celia was legally married to Ramirez, and whether it was lying in wait for appellant to acquire a handgun three days before the murder. In other notes, the jury asked: "Is it possible to rob a dead man? [¶] . . . Did Celia own the money after [Ramirez] was dead? Could she then have, quote, given the money to [appellant]?" In another note, the jury asked: "Can we deliberate on a probable scenario that neither side, People or defense, presented?" "In the above question a paradox exits where a theory can neither be proved or unproved. Is this paradox allowable within [the] instructions?"

Before the trial court responded to the written questions, four jurors signed a note that said: "We all move to remove Juror #1 because he refused & refuses to abide by the jury instructions." Five other jurors submitted a similar note: "We the undersigned ask that Juror #1 to be removed because he is unwilling to abide by the jury instructions."

The prosecution argued that a rogue juror was not following the instructions. Over defense objection, the trial court questioned each juror who signed the notes.

---

not be a codefendant in the particular trial. You must not speculate about whether those other persons have been or will be prosecuted. Your duty is to decide whether the defendant on trial here committed the crimes charged."

4

The jury foreperson (Juror No. 7) stated that Juror No. 1 was not "following the rules that were provided to us as a jury in evaluation of evidence that was presented in this case."

Juror No. 2 said that Juror No. 1 is "inserting evidence that isn't there. He's bringing in his own thoughts and it's not evidence. And from the instructions I believe we are supposed to work from the evidence."

Juror No. 3 reported that Juror No. 1 was considering things that were not evidence. "He wants to -- everything has to have a specific theory or reason [f]or something that's not was in this courtroom."

Juror No. 5 said that Juror No. 1 cannot decide whether "a statement is either the truth or a lie" and speculates on events that were not brought up during the trial. "It's almost like two things have to be proved beyond a reasonable doubt." Juror No. 1 was not following the jury instructions and wanted "[a]ll doubt [eliminated], not just reasonable doubt."

Juror No. 6 reported that Juror No. 1 is "making up his own scenarios. . . and not going by the evidence. He has his own scenarios. And if something fits, we will ask him is this truth or not truth evidence and he won't give us an answer. . . It's not beyond a reasonable doubt. He wants absolute, He is thinking so absolute there is no doubt. He just will not listen to anything we have to say."

Juror No. 10 stated that Juror No. 1 has been "speculating ever since we have been in the deliberation room. He's acting as an advocate. And I know we are told not to speculate and do not act as an advocate and he's doing both of these things."[4]

---

[4] Before deliberating, the jury was instructed not to let sympathy influence its decision (CALCRIM 200) and that "[t]he evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." (CALCRIM 220.) "Your role is to be an impartial judge of the facts, not to act as an advocate for one side or the other." (CALCRIM 3550.)

Juror No. 11 stated that Juror No. 1 is "totally . . . unreasonable. He wouldn't convict Kadafi[i]." "[T]here's no way of reasoning with him. He brings in scenarios that weren't even entered into the trial . . . And he feels as a juror he has a right to do that, to suspect anything and everything. So it's an impossible situation."

Juror No. 12 reported that Juror No. 1 was not following the instructions and "creating theories that we don't think we are allowed to create based on [the] evidence provided and your instructions."

The trial court removed Juror No. 1 on the ground that he "has not followed the law as instructed; . . . he's . . . considering evidence that was not submitted in this case; [he's] . . . making up facts and evidence and not listening to other jurors, thereby not deliberating as required by law." After an alternate juror was seated, the jury began deliberations anew and returned a guilty verdicts.

Appellant contends that the trial court erred in removing Juror No. 1 because the misconduct was not serious. (§ 1089 [juror discharge requires good cause]; *People v. Cleveland* (2001) 25 Cal.4th 466, 474 [trial court must find juror unable to perform his/her duty].) We review for abuse of discretion. (*Ibid*.) A trial court may not dismiss a juror unless "it appears as a 'demonstrable reality' that the juror is unable or unwilling to deliberate. [Citations.]" (*Id.*, at p. 484.)

Juror No. 1 ignored the instructions, tried to apply his own legal standards, and held the prosecution to a burden of proof higher than proof beyond a reasonable doubt. A juror's refusal to follow the law is good cause for discharge. (*People v. Alexander* (2010) 49 Cal.4th 846, 926.) Jurors "'are not allowed either to determine what the law *is* or what the law *should* be.' [Citation.]" (*In re Stankewitz* (1985) 40 Cal.3d 391, 398.) The removal of Juror No. 1 for cause does not violate appellant's right to jury trial. (*People v. Lomax* (2010) 49 Cal.4th 530, 591-592.)

Appellant complains that the other jurors did not give specifics about Juror No. 1's misconduct. The trial court's inquiry was a "delicate matter" and had to be circumscribed to protect the sanctity of the jury deliberations. (*People v. Cleveland*

6

(2001) 25 Cal.4th 466, 484.)  The inquiry focused on the conduct of the jurors, rather than the content of their deliberations.  (*Id.*, at p. 485.)

Here the juror misconduct was clear.  Juror No. 10 reported that Juror No. 1 was speculating and advocating for the defense.  Other jurors complained that Juror No 1 was focusing on Celia's possible involvement in the murder rather than appellant's culpability.  Another juror complained that Juror No. 1 refused to assign truth or falsity to the evidence and applying his own standard of proof.  (See e.g., *People v. Weatherton* (2014) 59 Cal.4th 589, 600.)  This type of misconduct undermines the cornerstone of our jury system:  a decision by neutral fact finders based solely upon the law and the evidence.  (*United States v. Gorham*) (1975) 523 F.2d 1088, 1098.)  Both the defendant and the People have the right to expect that jurors will conscientiously consider and weigh the evidence, apply the law, and reach a just result regardless of the consequences.  (CALCRIM 200.)

Appellant contends that the prosecution engaged in misconduct by asking prospective jurors to report juror misconduct, thus enabling the jurors to seek Juror No.1's removal because he viewed the evidence differently.[5]  (See *People v. Engelman* (2002) 28 Cal.4th 436, 445 [disapproving of CALJIC 17.41.1 "juror snitch" instruction].) Appellant forfeited the alleged error by not objecting.  (*People v. Duenas* (2012) 55 Cal.4th 1, 14.)  On the merits, it is not error for the prosecution to voir dire prospective jurors on whether they would report perceived juror misconduct.  (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1055.)  Juror No. 12 stated there was no personal animosity in reporting the misconduct and that Juror No. 1 was simply not following the instructions.  The trial court did not err in removing Juror No. 1.  "[A] court may

_____

[5] During voir dire, the prosecution asked prospective jurors whether they were strong enough to tell fellow jurors to stay focused on the evidence and not speculate about things that did not come out at trial.  "[O]nce you get back there and you begin to deliberate, if you find that someone is not deliberating in good faith, [that] they are not considering the evidence and there are not discussing what you have in front of you, are you a strong enough person that you would let the Court know that?"

7

exercise its discretion to remove a juror for serious and wilful misconduct, such as . . . repeated violation of the court's instructions, even if this misconduct is 'neutral' as between the parties and does not suggest bias toward either side." (*People v. Daniels* (1991) 52 Cal.3d 815, 863-864.)

Appellant complains that the trial court did not respond to the jury's pending questions. After Juror No. 1 was replaced with an alternate, the jury was instructed to start deliberations anew. (CALCRIM 3575.)[6] The questions posed by the original jury were irrelevant.

*Sentencing Error: Multiple LWOPs*

On Count 1 for first degree murder, the jury returned true findings on two special circumstance allegations (murder in commission of a robbery and lying in wait) and the section 12022.53, subdivision (d) firearm enhancement. The Attorney General conceded that the trial court erred in imposing consecutive life without possibility of parole (LWOP) sentences on each special circumstance allegation. We agree. On count 1, appellant was sentenced to 25-years-to-life for first degree murder, plus 25 years to life on the firearm enhancement, plus LWOP on the first special circumstance (murder in commission of robbery), plus LWOP on the second special circumstance (lying in wait) for an aggregate term of 50 years to life plus two consecutive LWOPs. Because appellant was convicted on one count of murder with multiple special circumstances, the trial court could only impose a single LWOP sentence. Section 190.2, subdivision (a) provides: "The penalty for a defendant who is found guilty of murder in the first degree is death or [LWOP] if one or more of the following special circumstances has been found under Section 190.4 to be true . . . ." Multiple LWOPs are not permitted. (See Levenson & Ricciardulli, Cal. Criminal Law (The Rutter Group 2013) § 5:30, p. 5-70.) We accordingly modify the sentence on

---

[6] The jury was instructed: "[Y]ou must set aside and disregard all past deliberations and begin your deliberations all over again. Each of you must disregard the earlier deliberations and decide this case as if those earlier deliberations had not taken place." (CALCRIM 3575.)

8

count 1 to reflect a sentence of LWOP plus 25 years to life on the firearm enhancement. (§§ 190.2, subd. (a); 12022.53, subd. (d); see *People v. Chiu* (2003) 113 Cal.App.4th 1260, 1265 [25 year to life firearm enhancement must be imposed consecutive to LWOP sentence].) The trial court also imposed a $10,000 parole revocation fine (§ 1202.45) which is stricken. (*People v. Oganesyan, supra,* 70 Cal.App.4th at pp. 1185-1186 [section 1202.45 fine may not be imposed where defendant receives LWOP sentence].)

*Count 5: Firearm Enhancement*

On count 5 for dissuading a witness by force or fear, the trial court imposed a 25-year-to-life firearm enhancement. (§ 12022.53, subd. (d).) Section 12022.53, subdivisions (a) and (d) limit the enhancement to certain felonies, none of which include the crime of dissuading a witness by force or fear. We accordingly strike the 25-year-to-life enhancement on count 5. We would, generally speaking, remand for resentencing on section 12022.5, subdivision (a) (personal use of a firearm during the commission of a felony) which is lesser included enhancement. (*People v. Majors, supra,* 18 Cal.4th at p. 410; *People v. Fialho, supra,* 229 Cal.App.4th at pp. 1397-1399.) This would allow the trial court to exercise its discretion to impose an enhancement of three, four or 10 years pursuant to section 12022.5, subdivision (a). Section 1170.15 provides that a consecutive three-year midterm be imposed on count 5 and "shall include the full term prescribed for any enhancements imposed for being armed with or using a . . . firearm[.]" (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1833-1834.) To do so here, in light of the other lawful sentences imposed, would be an exercise in futility. We will order the judgment to show the minimum three year term. (Pen. Code, § 1260.)

*Abstract of Judgment*

The abstract of judgment (page 1, paragraph 6.c.) erroneously states that appellant was sentenced to 100 years to life on counts 1, 2, and 5. The trial court imposed a 25-year-to-life firearm enhancement on count 1 (first degree murder) and count 2 (second degree robbery) but no term of 100 years to life was imposed on any

9

single count.  The superior court clerk is directed to amend the abstract of judgment to reflect that a 25-year-to-life firearm enhancement was imposed on counts 1 and 2.

The abstract of judgment (page 1, paragraph 4) incorrectly states that LWOP terms were imposed on count 2 (robbery) and count 5 (dissuading a witness by force/fear).   The superior court clerk is directed to amend the abstract of judgment to reflect that only one LWOP sentence was imposed on Count 1 for special circumstances, first degree murder.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [oral pronouncement of judgment governs over abstract of judgment].)

Appellant was sentenced to a mandatory, three-year consecutive midterm count 5 for dissuading a witness by force/fear.  (§ 136.1, subd. (c); see 1170.15 and *People v. Hennessey, supra,* 37 Cal.App.4th at pp. 1833-1834.)  The abstract of judgment and sentencing minute order incorrectly state that an upper term was imposed. The superior court clerk is directed to amend the abstract of judgment and March 6, 2013 sentencing minute order to reflect  that a consecutive three-year midterm sentence was imposed on count 5 pursuant to section 1170.15.

*Conclusion*

The judgment is modified to reflect that appellant was sentenced as follows:  on count 1 (special circumstances, first degree murder), life without the possibility of parole plus 25 years to life on the section 12022.53, subdivision (d) firearm enhancement; and a consecutive sentence of eight years eight months on counts 2, 3, and 5, plus a 25-year-to-life firearm enhancement on count 2 for second degree robbery
(§ 12022.53, subd. (d)).  The determinate term of imprisonment shall be served first. (§ 669, subd. (a); *People v. Garza* (2003) 107 Cal.App.4th 1081, 1094.)

The 25-years-to-life firearm enhancement on count 5 is stricken because section 12022.53 does not apply to the crime of dissuading a witness by force or fear. (See § 12022.53, subds. (a), (d).)  Section 12022.5, subdivision (a) (personal use of a firearm during the commission of a felony) is a lesser included enhancement and may be imposed if the trial court so decides.  (*People v. Majors, supra,* 18 Cal.4th at p. 410;

10

*People v. Fialho, supra,* 229 Cal.App.4th at pp. 13971398.)  The judgment is modified to show a three year enhancement pursuant to section 12022.5, subdivision (a).  (See § 1170.15 [providing for full term enhancement].)  The trial court is directed to strike the $10,000 parole revocation fine (§ 1202.45) is stricken. (*People v. Oganesyan, supra,* 70 Cal.App.4th at pp. 1185-1186 [section 1202.45 fine may not be imposed where defendant received LWOP sentence].)

As modified, the judgment, is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P.J.


PERREN, J.

11

Jeffrey Bennett, Judge

Superior Court County of Los Angeles

_____

Mark Yanis, under appointment by the Court of Appeal, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Timothy M. Weiner, Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.