83 Cal.Rptr.2d 157 (1999)
70 Cal.App.4th 1178
The PEOPLE, Plaintiff and Respondent,
v.
Karen OGANESYAN, Defendant and Appellant.
No. B118676.
Court of Appeal, Second District, Division Five.
March 25, 1999.
Review Denied June 15, 1999.[**]
Mark D. Lenenberg, under appointment by the Court of Appeal, Chatsworth, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant *158 Attorney General, Pamela C. Hamanaka, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.
Certified For Partial Publication.[*]
TURNER, P.J.

I. INTRODUCTION
Defendant, Karen Oganesyan, appeals from his convictions for two counts of murder; one count in the first and the other in the second degree. (Pen Code,[1] § 187, subd. (a).) Defendant was found to have personally used a firearm in the commission of both murders. (§ 12022.5, subd. (a).) As to count 2, a multiple murder special circumstances finding was found to be true. (§ 190.2, subd. (a)(3).) As a result as to count 2, defendant has received a sentence of life in prison without possibility of parole. He argues: (1) he was denied the right to compulsory process by the prosecutor's delay in revealing the addresses of two material witnesses; (2) the trial court improperly denied his request for special instruction on the burden of proof in a self-defense case; and (3) his sentence constitutes cruel and unusual punishment. In the published portion of this opinion, we discuss the argument of the Attorney General that an additional restitution fine pursuant to section 1202.45 must be imposed. We reject the contention of the Attorney General and affirm the judgment with one modification.

II. DISCUSSION

A.-E.[***]
[[/]][***]
As to count 1, defendant has received an indeterminate sentence for second degree murder plus an additional four-year term resulting from a section 12022.5, subdivision (a) finding of firearm use. As to count 2, defendant has also received a sentence of life in prison without possibility of parole plus an additional 10-year term for firearm use as a result of his conviction for first degree special circumstances murder. The trial court imposed a $10,000 restitution fine pursuant to section 1202.4, subdivision (b)(1).[2] The Attorney General argues that the trial court had a jurisdictional duty to impose an additional restitution fine pursuant section 1202.45 which provides: "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4. This additional restitution fine shall be suspended unless the person's parole is revoked." In the present case, the trial judge failed to impose the section 1202.45 additional restitution fine. Defendant does not dispute that if the fine applies to him, the trial court had a jurisdictional obligation to impose the additional section 1202.45 assessment. (Cf. People v. Scott (1994) 9 Cal.4th 331, 354, 36 Cal.Rptr.2d 627, 885 P.2d 1040; People v. Welch, supra, 5 Cal.4th at p. 235, 19 Cal.Rptr.2d 520, 851 P.2d 802; People v. Karaman (1992) 4 Cal.4th 335, 345-346, fn. 11, 349, fn. 15, 14 Cal.Rptr.2d 801, 842 P.2d 100; In re Ricky H. (1981) 30 Cal.3d 176, 190-192, 178 Cal.Rptr. 324, 636 P.2d 13; People v. Davis (1981) 29 Cal.3d 814, 827 & fn. 5, 176 Cal.Rptr. 521, 633 P.2d 186; People v. Serrato (1973) 9 Cal.3d 753, 763-765, 109 Cal.Rptr. 65, 512 P.2d 289 overruled on another point in People v. Fosselman (1983) 33 Cal.3d 572, 583, fn. 1, 189 Cal.Rptr. 855, 659 P.2d 1144; In re Sandel (1966) 64 Cal.2d 412, 414-418, 50 Cal.Rptr. 462, 412 P.2d 806.) Rather, defendant argues that section *159 1202.45 does not apply to an accused who receives a sentence of life in prison without possibility of parole. Although the issue is close and subject to conflicting arguments of some substance, we agree with defendant.
This is an issue of statutory interpretation. We apply the following standard of statutory review described by the California Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (Freedom Newspapers, Inc. v. Orange County Employees Retirement System (1993) 6 Cal.4th 821, 826, 25 Cal.Rptr.2d 148, 863 P.2d 218; People v. Jones (1993) 5 Cal.4th 1142, 1146, 22 Cal. Rptr.2d 753, 857 P.2d 1163.) The Supreme Court has emphasized that the words in a statute selected by the Legislature must be given a "commonsense" meaning when it noted: "`Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (Mercer v. Department of Motor Vehicles (1991) 53 Cal.3d 753, 763, 280 Cal.Rptr. 745, 809 P.2d 404[ ]; Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299[ ].)' (People v. Valladoli (1996) 13 Cal.4th 590, 597, 54 Cal.Rptr.2d 695, 918 P.2d 999[].)" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633, 59 Cal.Rptr.2d 671, 927 P.2d 1175.) Further, our Supreme Court has noted: "`If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute)....'" (Delaney v. Superior Court (1990) 50 Cal.3d 785, 798, 268 Cal.Rptr. 753, 789 P.2d 934.) However, the literal meaning of a statute must be in accord with its purpose as the Supreme Court noted in Lakin v. Watkins Associated Industries (1993) 6 Cal.4th 644, 658-659, 25 Cal.Rptr.2d 109, 863 P.2d 179 as follows: "We are not prohibited `from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]....'" In Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735, 248 Cal.Rptr. 115, 755 P.2d 299, our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation]...." The Supreme Court has held: "`The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' (Clean Air Constituency v. California State Air Resources Bd. (1974) 11 Cal.3d 801, 813, 114 Cal.Rptr. 577, 523 P.2d 617[ ].)" (Webster v. Superior Court (1988) 46 Cal.3d 338, 344, 250 Cal.Rptr. 268, 758 P.2d 596.) Further, the Supreme Court has held: "We have recognized that a wide variety of factors may illuminate the legislative design, `"such as context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy and contemporaneous construction."' (In re Marriage of Bouquet [ (1976) ] 16 Cal.3d 583, 587, 128 Cal.Rptr. 427, 546 P.2d 1371[ ] quoting Alford v. Pierno (1972) 27 Cal. App.3d 682, 688, 104 Cal.Rptr. 110[ ].)" (Walters v. Weed (1988) 45 Cal.3d 1, 10, 246 Cal.Rptr. 5, 752 P.2d 443.)
The issue of whether section 1202.45 applies when only a sentence of life imprisonment without possibility of parole is imposed is the easiest to resolve. When there is no parole eligibility, the fine is clearly not applicable. The statutory language itself is clear, the additional restitution fine is only imposed in a "case" where a sentence has been imposed which includes a "period of parole." (§ 1202.45.) Simply stated, the clear legislative intent which can be derived from the language of the statute is clear; if there is no parole eligibility, no section 1202.45 fine may *160 be imposed. Moreover, section 1202.45 provides that the fine is suspended during the period of parole. If a "case" is one in which a sentence has been imposed but there is no "period of parole," then the suspension language becomes meaningless. Needless to note, we must not construe statutory language so as to render terms meaningless or surplusage. (Manufacturers Life Ins. Co. v. Superior Court (1995) 10 Cal.4th 257, 274, 41 Cal.Rptr.2d 220, 895 P.2d 56; Woosley v. State of California (1992) 3 Cal.4th 758, 775-776,13 Cal.Rptr.2d 30, 838 P.2d 758.)
However, the present case involves a situation where there are two sentences, both where section 12022.5, subdivision (a) firearm use findings have been imposed. One sentence, for the special circumstances first degree murder conviction with an additional finding of firearm use, is one where there is no parole eligibility. The other sentence of 15 years to life for second degree murder plus the additional section 12022.5, subdivision (a) firearm use term is one where defendant could conceivably be eligible for parole. The Attorney General argues with some justification then that this is a "case" where a sentence has been imposed which includes a "period of parole." However, two reasons, based upon well-established principles statutory interpretation, lead us to reject this analysis.
First, the entire statutory scheme concerning restitution fines has as its legislative purpose the recoupment from prisoners and potentially from parolees who violate the conditions of their parole some of the costs of providing restitution to crime victims. As we noted in People v. Hong (1998) 64 Cal. App.4th 1071, 1078-1079, 76 Cal.Rptr.2d 23: "California has adopted a comprehensive constitutional and legislative scheme for providing restitution for crime victims. Article I, section 28 of the California Constitution provides, `It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.' This right has been recognized statutorily as well. (§ 1202.4, subd. (a)(1).) In addition to direct restitution payments to the victim from the offender, the Legislature has over time, beginning first in 1965, developed a statutory scheme providing for indemnity for crime victims by the State Board of Control. (People v. Broussard (1993) 5 Cal.4th 1067, 1072-1073, 22 Cal. Rptr.2d 278, 856 P.2d 1134[ ]; People v. Young (1995) 38 Cal.App.4th 560, 563-564, 45 Cal.Rptr.2d 177[].) The statutory scheme providing for the operation of the Restitution Fund is extensive and wide-ranging. That extensive statutory scheme includes the requirement that the Director of Corrections collect moneys owed to the Restitution Fund from inmate earnings." (Fn.omitted.) Section 1202.4, subdivision (e) explicitly requires the following, "The restitution fine shall ... be deposited in the Restitution Fund in the State Treasury." Compensation of crime victims in large part is accomplished through the Restitution Fund. (Gov.Code, § 13959; People v. Hong, supra, 64 Cal.App.4th at p. 1079, 76 Cal.Rptr.2d 23; People v. Valdez (1994) 24 Cal.App.4th 1194, 1202, 30 Cal. Rptr.2d 4.)
The chances of recoupment of costs resulting from a section 1202.45 fine would be extremely rare from a prisoner serving sentences one of which prohibits parole and another from which the defendant could ultimately be paroled which are the circumstances in this case. Under imaginable circumstances, a Governor could extend clemency, for example, by providing for parole eligibility. (Cal. Const., art. V, § 8; § 4800 et seq.) If granted parole I ineligibility by reason of executive clemency, then the prisoner would have to secure a parole release date from the Board of Prison Terms. (§ 3041, subd. (a); Cal. Code Regs., tit. 15, § 2300 et seq.) If actually released, then a defendant would have no duty to pay the section 1202.45 fine unless there was a violation of a parole condition. If the defendant violated a parole condition and was apprehended, then, and only then, under typical circumstances would the opportunity for recoupment of restitution costs arise. Our point is this: there is no evidence the Legislature intended that its cost recoupment purposes were to apply under such an extremely *161 limited set of circumstances. There are no legislative committee reports which support the theory of the Attorney General. In fact, there were no committee reports prepared at all concerning section 1202.45. The chances of actual recoupment of costs in a case such as this where there are parole and non-parole offenses are almost beyond rational belief. In the absence of evidence the Legislature intended such an unreasonable state of affairs to exist, we decline to ascribe such an intention to the Assemblymembers and Senators.[3] Moreover, the "evil to be remedied" (Walters v. Weed, supra, 45 Cal.3d at p. 10, 246 Cal.Rptr. 5, 752 P.2d 443; In re Marriage of Bouquet, supra, 16 Cal.3d at p. 587, 128 Cal.Rptr. 427, 546 P.2d 1371), recoupment of restitution costs, is not advanced under the extraordinarily limited circumstances where a special circumstances murderer is granted clemency and ultimately paroled.
Second, the language of section 1202.45 indicates that the overall sentence is the indicator of whether the additional restitution fine is to be imposed. Section 1202.45 indicates that it is applicable to a "person ... whose sentence includes a period of parole." At present, defendant's "sentence" does not allow for parole. When we apply a common sense interpretation to the language of section 1202.45 (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist, supra, 14 Cal.4th at p. 633, 59 Cal. Rptr.2d 671, 927 P.2d 1175; People v. Valladoli (1996) 13 Cal.4th 590, 597, 54 Cal. Rptr.2d 695, 918 P.2d 999), we conclude that because the sentence does not presently allow for parole and there is no evidence it ever will, no additional restitution fine must be imposed. Based on the collective reasons discussed above, no jurisdictional error occurred when the trial court declined to impose a section 1202.45 additional restitution fine.

III. DISPOSITION
The judgment is modified to reflect the $10,000 Penal Code section 1202.4, subdivision (b)(1) restitution fine discussed in the body of this opinion. In all other respects, the judgment is affirmed. The clerk of the superior court is directed to prepare an amended abstract of judgment consistent with this opinion. The superior court clerk is then directed to deliver the corrected abstract of judgment to the Department of Corrections.
GRIGNON, J., and ARMSTRONG, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.A through the heading and indicated portion of part II.E.
[**] Mosk, J., dissented.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[***] See footnote *, ante.
[2] Section 1202.4, subdivision (b)(1) provides in relevant part: "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record. [¶] (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony...."
[3] We recognize there are other potential scenarios which could lead to a life without possibility of parole inmate securing her or his ultimate release based on executive clemency. Some involve a situation where an accused had previously been convicted of a felony and is sentenced to life in prison without possibility of parole because of a new special circumstances murder conviction. Under those circumstances, a California Supreme Court majority would have to approve of the proposed executive clemency before the Governor could act. (Cal. Const., art. V, § 8; § 4852.16; Green v. Superior Court (1934) 2 Cal.2d 1, 3, 37 P.2d 694.) Moreover, a Governor could order the parole of a special circumstances murderer as part of a clemency grant thereby speeding up the process where cost recoupment could occur in the event of a violation of a condition of release by a parolee; albeit there is no evidence the Legislature ever contemplated or intended recoupment to occur under such unlikely circumstances.