Filed 9/29/15  P. v. Daniels CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENNETH DANIELS, JR.,<br><br>    Defendant and Appellant. | D068056<br><br><br>(Super. Ct. No. SWF024245) |

APPEAL from a judgment of the Superior Court of Riverside County, Angel M. Bermudez, Judge.  Affirmed as modified but remanded for resentencing.

Kimberly J. Grove, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Kenneth Daniels, Jr. of three counts of residential burglary (Pen. Code,[1] § 459; counts 1, 4, 8); two counts of rape (§ 261, subd. (a)(2); counts 2, 5); two counts of forcible oral copulation (§ 288a, subd. (c)(2); counts 3, 6); two counts of attempted residential burglary (§§ 664/459; counts 7, 12); one count of first degree murder (§ 187, subd. (a); count 9); one count of attempted rape (§§ 664/261, subd. (a)(2); count 10); and one count of elder abuse (§ 368, subd. (b)(1); count 11).

In regard to the first degree murder offense, the jury found true that Daniels committed the murder during an attempted rape and residential burglary (§§ 190.2, subds. (a)(17)(C), (G), 664/261, subd. (a)(2), 459). The jury further found Daniels committed the rapes and forcible oral copulations during a burglary (§ 667.61, subd. (e)(2)), and had entered an inhabited dwelling with the intent to commit a violent sex offense (§ 667.61, subds. (c), (d)(4)). As to counts 2 and 3, the jury found Daniels personally inflicted great bodily injury during the commission of the offenses (former § 667.61, subd. (e)(3);[2] §§ 12022.7, 12022.8). In regard to count 11, the jury found Daniels proximately caused the death of a person 70 years of age or older.

---

[1]    Statutory references are to the Penal Code unless otherwise specified.

[2]    At the time Daniels committed his crimes in 2007, the great bodily injury circumstance of the One Strike law was found in subdivision (e)(3). (Former § 667.61, (e)(3); Stats. 2006, ch. 337 (S.B. 1128), eff. Sept. 20, 2006; Initiative Measure (Prop 83); § 12, approved Nov. 7, 2006, eff. Nov. 8, 2006.) In 2010, the Legislature amended the One Strike law, moving the great bodily injury circumstance to subdivision (d) as paragraph (6). (Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 667.61, pp. 399-400; Stats. 2010, ch. 219 (A.B. 1844), § 16, eff. Sept. 9, 2010.)

The court sentenced Daniels to prison for an aggregate term of life without the possibility of parole, plus four consecutive terms of 25 years to life, and a determinate term of eight years four months.

Daniels appeals, contending (1) the trial court committed prejudicial error in refusing to instruct the jury on voluntary intoxication with respect to the murder offense and accompanying special circumstance allegations; (2) the portions of Daniels's sentence related to the burglary offenses should have been stayed under section 654; (3) the trial court did not properly exercise its discretion under section 667.61 prior to sentencing Daniels; and (4) the parole revocation fine should be stricken. We agree with Daniels that the portion of his sentence related to the burglary offenses should have been stayed under section 654. However, we conclude the rest of Daniels's claims are without merit. As such, we affirm the judgment as modified.

## FACTUAL BACKGROUND

Because Daniels neither challenges the sufficiency of the evidence nor questions the admissibility of certain evidence, we avoid a thorough discussion of the unpleasant facts of this case. Instead, we present an abbreviated summary of the salient facts to provide context to the issues Daniels raises here.

Daniels's crimes took place over five months at the Oak Terrace Apartments, a senior citizen apartment complex in Hemet. The apartments were in a gated complex surrounded by an eight-foot high fence as well as a cinder block wall topped with a railing on one side of the complex.

3

On August 21, 2007, Daniels's entered the apartment of Jane Doe No. 1 through the sliding glass door located on the balcony. Jane Doe No. 1 saw Daniels crouching on the floor of the kitchen in her apartment, and she attempted to flee. However, Daniels grabbed her, knocked her to the ground, and repeatedly punched her in the face while straddling her. Daniels eventually stopped punching Jane Doe No. 1, and then he raped her and made her orally copulate him. Jane Doe No. 1 did not smell any alcohol on Daniels's breath.

On October 19, 2007, Daniels once again entered Jane Doe No. 1's apartment while Jane Doe No. 1 slept. Daniels forced Jane Doe No. 1 to orally copulate him then repeatedly raped her. Jane Doe No. 1 did not smell any alcohol on Daniels's breath.

On December 11, 2007, Daniels entered the apartment of Jane Doe No. 2 at the Oak Terrace Apartments. Daniels beat Jane Doe No. 2 to death. Jane Doe No. 2 was 74 years old, four feet eight inches tall, and weighed 73 pounds. She used a wheelchair.

On December 28, 2007, Daniels attempted to break into Jane Doe No. 3's apartment at the Oak Terrace Apartments. When Jane Doe No. 3 heard a person (who turned out to be Daniels) outside her apartment window, she called the police. Daniels ran from the apartment complex, but was captured by the police.

The Oak Terrace Apartments had video surveillance cameras covering the main entrance and exit gates for vehicles and pedestrians, the management office, and the pool. During the time that Daniels was committing his crimes at the complex, additional video surveillance cameras were added, included one directed toward Jane Doe No. 1's apartment.

4

DISCUSSION

I

*CALCRIM NO. 625*

Daniels contends the trial court erred in refusing to provide a voluntary intoxication jury instruction (CALCRIM No. 625) with respect to the murder offense and the special circumstances allegations related to that offense. We disagree.

A. Standard of Review and the Law

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In determining whether error has been committed in giving jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given. (*Ibid.*) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*Ibid.*) "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

Generally, the trial court is required to instruct the jury on the general principles of law that are closely and openly connected with the evidence and that are necessary to the jury's understanding of the case. (*People v. Barker* (2001) 91 Cal.App.4th 1166, 1172.) It also has a duty to refrain from giving incorrect instructions or instructions on principles of

5

law that are irrelevant and that would have the effect of confusing the jury or relieving it from making findings on the relevant issues. (*Ibid*.; see *People v. Smithey* (1999) 20 Cal.4th 936, 976-977, fn. 7.)

"[A]n instruction on voluntary intoxication, explaining how evidence of a defendant's voluntary intoxication affects the determination of whether defendant had the mental states required for the offenses charged, is a form of pinpoint instruction that the trial court is not required to give in absence of a request." (*People v. Bolden* (2002) 29 Ca1.4th 515, 559.) A trial court is required to give a requested pinpoint instruction "only if it is supported by substantial evidence." (*People v. Ward* (2005) 36 Ca1.4th 186, 214.) " ' "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." ' " (*People v. Cole* (2004) 33 Ca1.4th 1158, 1215.) If the evidence is " 'minimal and insubstantial,' " the court need not give the requested instruction. (*People v. Barton* (1995) 12 Ca1.4th 186, 201.)

## B. Analysis

Daniels's trial counsel requested that the trial court instruct the jury on the defense of voluntary intoxication with respect to the murder offense (count 9) and the special circumstance allegations related to that offense. To this end, Daniels's trial counsel asked for CALCRIM No. 625 to be given to the jury. That instruction states:

> "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill[,] [or] [the defendant acted with deliberation and premeditation[,]] [[or] the defendant was unconscious when (he/she) acted[,]] [or the defendant *<insert other specific intent required in a homicide charge or other charged offense>*.] [¶] A person is *voluntarily intoxicated* if

6

he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] You may not consider evidence of voluntary intoxication for any other purpose."

The court declined to give CALCRIM No. 625 to the jury in regard to the murder offense and the special circumstance allegations, finding that the instruction was not supported by the evidence. Daniels argues that the trial court prejudicially erred in refusing to give the instruction.[3] He emphasizes that video footage of him on December 11 showed his lack of balance and coordination, which could have led the jury to believe he was intoxicated on the night of the murder.

Daniels also points out that his trial counsel offered evidence regarding his habitual drinking. For example, trial counsel presented testimony from several of Daniels's friends that during the period of July through December 2007, Daniels attended parties and drank heavily. In addition, Daniels's blood alcohol level after his arrest on December 28 was .10 percent as of 3:55 a.m. and would have been .14 percent at 1:30 a.m. Daniels contends that without CALCRIM No. 625, the jurors were left without guidance as how to evaluate this

---

[3]    In his opening brief, Daniels mentions that his trial counsel argued that evidence of Daniels's intoxication in connection with count 12 (attempted residential burglary) could be used to infer intoxication on the date of the murder, some three weeks earlier. To this end, Daniels's trial counsel analogized the inference of intoxication with the prosecution's use of other crimes evidence to prove intent to rape for its felony murder theory. Here, Daniels fails to provide any authority for this position or explain why voluntary intoxication is akin to other crimes evidence. The appellant has the burden of proving error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Further, the appellant must support an argument with citations to legal authorities or his argument may be deemed waived. (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 522.) Because Daniels has not satisfied either burden with respect to his inference of intoxication argument, we deem such contention waived.

7

evidence with respect to the murder charge and the special circumstances allegations. We disagree.

There was not sufficient evidence to establish a pattern of drinking in connection with the offenses committed. The murder occurred around 5:00 a.m. on December 11, 2007, almost three weeks before Daniels's arrest. There is no evidence that Daniels was intoxicated when he sexually assaulted Jane Doe No. 1 on Tuesday, August 21, 2007, or on Friday, October 19, 2007. Jane Doe No. 1 did not smell alcohol on Daniels's breath during either attack. Instead, Daniels smelled as if he had freshly showered and put on cologne.

Moreover, Daniels also failed to establish sufficient evidence of habitual drinking in general to warrant an intoxication defense. Although Daniels's friends testified that they played drinking games at parties during the weekends, and sometimes Thursday nights, December 11, 2007, was a Tuesday. None of Daniels's friends testified that they regularly partied and played drinking games on Monday nights into Tuesday mornings. Rather, they testified that Daniels did not drink all the time. Further, the amounts they would drink at the parties, and how long the parties would last, varied, depending on how many drinking games they played. Daniels simply did not produce enough evidence to establish his becoming intoxicated was a habit or a custom.

In addition, Daniels insists video footage showed that he lacked balance and coordination on December 11, which would allow the jury to infer that he was intoxicated at the time of the murder. Nevertheless, Daniels fails to identify any exhibit in the record consisting of such video footage. Instead, he merely cites to his trial counsel's argument about the video footage: "And it's our position that the video evidence from December

8

11th shows Mr. Daniels with impaired balance and coordination." An attorney's argument, however, is not evidence.

Presumably, Daniels is referring to some portion of one of the seven CDs of video surveillance footage of the Oak Terrace Apartments that depicted him in that area. Although he does not point us to any specific exhibit by number, in an abundance of caution, we reviewed the relevant exhibits. We agree with the trial court regarding its interpretation of the pertinent portion of the video footage:

> "I disagree with the defense. I think it's a matter of argument or interpretation in terms of fluidity of the motions because the quality of the video is not necessarily outstanding in any way. It is a little bit jumpy at times. So one can't clearly conclude what is going on. But what you can see is the thought process of the individual as they are going about their duties. Whether it's A, time to scale a wall; whether it's B, a time to land. By the way[,] the stumble that was portrayed by the defense, one can clearly see that there is an avoidance of a bush on what would be the left—the right-hand side of the landing to the person that is making the landing, or the left-hand side to the person that is watching the video, and that is why there is kind of a backwards jump or gymnastics jump, if you will, as cited by the prosecutor. [¶] There is the visual observation as well of the car lights, which I have pointed out, which show that the person is not confused or disoriented in terms of the environment. So I think that the total argument as to what happened on December 11th, with regards to his state of sobriety, would be an invitation to the jury to speculate. That would be the only way that the instruction should be given. And I don't think that that is an appropriate reason to give the instruction. I will not give the voluntary intoxication instruction for that reason."

Simply put, we see nothing in the video footage that would allow the jury to infer that Daniels was intoxicated at the time of the murder on December 11. Further, because we determine that substantial evidence does not exist to support the giving of CALCRIM No. 625 in regard to the murder offense and related special circumstances, we conclude the

9

trial court did not err. (See *People v. Ward, supra*, 36 Cal.4th at p. 214; *People v. Barton, supra*, 12 Cal.4th at p. 201.)

II

*DANIELS'S SENTENCES FOR THE BURGLARY OFFENSES*

Daniels asserts, and the People concede, that the trial court erred by imposing sentences on the two burglary counts involving Jane Doe No. 1. Under subdivision (a) of section 667.61 (also known as the One Strike law), a defendant shall be sentenced to 25 years to life if he is convicted of an enumerated sex offense, including rape or forcible oral copulation, "under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e)." Section 667.61, subdivision (f) provides, in part:

> "If only the minimum number of circumstances specified in subdivision (d) or (e) that are required for the punishment provided in subdivision (a) . . . to apply have been pled and proved, that circumstance or those circumstances shall be used as the basis for imposing the term provided in subdivision (a) . . . , rather than being used to impose the punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty. . . ."

With regard to the August 21, 2007 attack, the jury found Daniels guilty of residential burglary (count 1), rape (count 2), and forcible oral copulation (count 3). With regard to the October 19, 2007 attack, the jury also found Daniels guilty of residential burglary (count 4), rape (count 5), and forcible oral copulation (count 6). In addition, the jury found Daniels committed the sex offenses during a first degree burglary with the intent to commit a violent sex offense (§ 667.61, subd. (d)(4)), and during the commission of a

10

burglary (§ 667.61, subd. (e)(2)). As to counts 2 and 3 (the first incident), the jury also found Daniels inflicted great bodily injury in committing the crimes (former § 667.61, subd. (e)(3)). Although the great bodily injury circumstance is now found in subdivision (d)(6), at the time Daniels committed his offenses in 2007, it was found in subdivision (e)(3). (See Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 667.61, pp. 399-400; Stats. 2006, ch. 337 (S.B. 1128), eff. Sept. 20, 2006; Initiative Measure (Prop. 83), § 12, approved Nov. 7, 2006, eff. Nov. 8, 2006; Stats. 2010, ch. 219 (A.B. 1844), § 16, eff. Sept. 9, 2010.) Therefore, the jury found one subdivision (d) circumstance true as to counts 5 and 6, and found one subdivision (d) circumstance true and two subdivision (e) circumstances true as to counts 2 and 3, mandating terms of 25 years to life for all four counts.

As mandated, the trial court sentenced Daniels to prison for 25-year-to-life terms on the four sex offense counts. The trial court also sentenced Daniels to determinate terms on the two burglary counts. Since the burglaries were used to impose the terms pursuant to the One Strike Law under both subdivisions (d) and (e), and only the minimum number of circumstances were found true, under section 667.61, subdivision (f), the trial court could not sentence Daniels separately for the burglaries. (See *People v. Mancebo* (2002) 27 Ca1.4th 735, 738.) Therefore, the trial court should have stayed Daniels's prison terms as to counts 1 and 4.[4]

---

[4] The trial court selected count 1 as the "primary charge for a determinate sentence." Because we conclude that the sentence to count 1 should be stayed, the People urge us to select either counts 7 or 12 as the "primary charge." In addition, the People contend that

11

*SENTENCING DANIELS UNDER THE ONE STRIKE LAW*

Daniels next contends the trial court erred in sentencing him to four consecutive sentences of 25 years to life under the One Strike law in connection with the two incidents involving Jane Doe No. 1, specifically counts 2 and 5 (rape), counts 3 and 6 (oral copulation). Daniels asserts that the trial court did not understand that it had discretion to sentence him consecutively and that such sentences were not mandatory. We disagree.

The One Strike law required that the trial court impose 25-year-to-life sentences for each count of rape and forcible oral copulation. (§ 667.61, subd. (a).) The One Strike law requires a sentencing court to impose those sentences consecutively if the crimes "involve the same victim on separate occasions as defined in subdivision (d) of Section 667.6." (§ 667.61, subd. (i).) To determine whether a defendant committed the crimes on separate occasions, "the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his . . . actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his . . . opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

---

this court would be "justified" in imposing the upper term as to counts 7 or 12, although the trial court selected one-third of the middle term for both counts. We decline to resentence Daniels, but will remand the case to the superior court for resentencing consistent with this opinion.

If the imposition of consecutive terms is not mandatory, the decision to impose consecutive or concurrent terms is left to the sentencing court's discretion under section 669. (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262-1263 (*Rodriguez*); see *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524.) "In exercising its discretion whether to impose concurrent or consecutive terms, a trial court should consider the factors set forth in California Rules of Court, rule 4.425." (*Rodriguez, supra*, 130 Cal.App.4th at p. 1262.) The criteria for imposing consecutive rather than concurrent terms include whether: "(1) The crimes and their objectives were predominately independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a).)[5] Other criteria include "[a]ny circumstances in aggravation or mitigation," except a fact used to impose an upper term or an enhancement, or a fact that is an element of an offense. (Rule 4.425(b).)

A court is "presumed to have been aware of and followed the applicable law" when imposing a sentence. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) Therefore, the burden is on Daniels to demonstrate that the court misunderstood its sentencing discretion. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)

---

5       All further rule references are to the California Rules of Court unless otherwise indicated.

Here, Daniels maintains the trial court did not make any of the necessary findings or otherwise determine that his sentences under the One Strike law should run consecutively. However, we do not find support in the record for Daniels's argument.

As a threshold matter, Daniels's trial counsel first raised the issue of consecutive sentences during the sentencing hearing: "I know the probation officer suggests or recommends consecutive sentences for the other counts, but given the sentence that the Court intends, I'm sure, to impose on Count 9, which is the sentence required by law, which is life without the possibility of parole, it would seem to me to be sort of useless to make any sentence consecutive to a sentence which will leave Mr. Daniels in the state prison for the rest of his life."

Later during the sentencing hearing, the prosecutor specifically requested four consecutive 25-year-to-life sentences on counts 2, 3, 5, and 6. The court gave Daniels's counsel an opportunity to address the prosecutor's request for consecutive sentences, but Daniels's counsel declined.

In determining the appropriate sentence for Daniels, the trial court found the crimes involved great violence, great bodily harm, the threat of great bodily harm, and a high degree of cruelty, viciousness, or callousness; the victims were particularly vulnerable; Daniels dissuaded a witness from coming forward and reporting the offense; the crimes involved planning, sophistication, and professionalism, and Daniels had engaged in violent conduct that indicated a serious danger to society. (Rules 4.421(a)(1), (3), (6), (8), (b)(1), 4.425(b).) The court also found there was no suggestion that the crimes were committed during a single period of aberrant behavior, as the crimes were spread out over time,

14

location, and victims. (Rule 4.425(a)(3).) Additionally, the sex crimes against Jane Doe No. 1 involved four separate acts of violence: rape and forcible oral copulation on August 21, 2007 (counts 2 and 3), and rape and forcible oral copulation on October 19, 2007 (counts 5 and 6). (§ 667.5, subd. (c)(3), (5); rule 4.425(a)(2).)

In sum, the trial court pronounced ample aggravating factors to justify imposing consecutive terms as to counts 3 and 5.

To the extent Daniels contends the trial court failed to state adequate reasons for imposing consecutive terms, he forfeited his claim by failing to object below. (*People v. Scott* (1994) 9 Ca1.4th 331, 352-353.) The court specifically asked Daniels's trial counsel if he wanted to respond to the prosecutor's argument that Daniels's sentences should run consecutively. Daniels's counsel declined to do so. Moreover, after the court described the crimes and explained Daniels's sentence, Daniels's counsel did not object. Here, the trial court provided multiple aggravating factors for imposing consecutive sentences as to Daniels's crimes. This was sufficient. (Cf. *People v. Osband* (1996) 13 Ca1.4th 622, 728-729; *People v. Bravot* (1986) 183 Cal.App.3d 93, 98 ["Articulation of one criterion for the imposition of a consecutive sentence is sufficient."].) Having not objected during the sentencing hearing, Daniels cannot now claim the court did not adequately state the reasons for Daniels's sentence. (*People v. Scott*, *supra*, 9 Ca1.4th at pp. 352-353.)

IV

*PAROLE REVOCATION FINE*

Lastly, Daniels claims the $3,360 stayed parole revocation fine must be stricken because he "was sentenced to a term of life without the possibility of parole." To this end,

15

Daniels relies on *People v. Battle* (2011) 198 Cal.App.4th 50 (*Battle*); *People v. Oganesyan* (1999) 70 Cal.App.4th 1178 (*Oganesyan*); *People v. McWhorter* (2009) 47 Cal.4th 318 (*McWhorter*); and *People v. Brasure* (2008) 42 Cal.4th 1037 (*Brasure*).

Section 1202.45, subdivision (a), provides: "In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine . . . assess an additional parole revocation restitution fine. . . ." This additional parole revocation restitution fine shall be suspended unless the person's parole is revoked.

Daniels's reliance on *Oganesyan* and *Battle* is misplaced. In *Oganesyan*, *supra*, 70 Cal.App.4th 1178, the court concluded that the parole revocation fine was improper because the defendant had only been sentenced to life without the possibility of parole. (*Id.* at p. 1183.) There was no discussion about any other determinate sentence. Likewise, *Battle*, *supra*, 198 Cal.App.4th 50, only concerned an indeterminate sentence. As such, in that case, the Attorney General conceded a parole revocation restitution fine was improper. (*Id.* at p. 63.)

In contrast to both *Oganesyan*, *supra*, 70 Cal.App.4th 1178 and *Battle*, *supra*, 198 Cal.App.4th 50, Daniels received determinate sentences on counts 1, 4, 7, and 12. The court also sentenced him to determinate terms for counts 8, 10, and 11, but suspended those sentences. So, unlike *Oganesyan* and *Battle*, Daniels's total prison time included determinate sentences. As such, we determine the instant matter is governed by *Brasure*, *supra*, 42 Cal.4th 1037.

16

In *Brasure*, our high court interpreted section 1202.45 as applying to defendants sentenced to any term that includes the possibility of parole. The court distinguished *Oganesyan*, *supra*, 70 Cal.App.4th 1178, "as involving no determinate term of imprisonment imposed under section 1170, but rather a sentence of life without the possibility of parole for first degree special circumstance murder and an indeterminate life sentence for second degree murder." (*Brasure*, *supra*, 42 Cal.4th at p. 1075.) Though the defendant in *Brasure* was sentenced to death, he was also sentenced to determinate terms (§ 1170) which, by law, the court reasoned, included the possibility of parole and a suspended parole revocation fine (§ 3000, subd. (a)(1), 1202.45; *Brasure*, *supra*, at p. 1075).

Like the defendant in *Brasure*, Daniels's sentence includes determinate terms and these carry with them the possibility of parole (§ 3000, subd. (a)(1)), and a suspended parole revocation fine (§ 1202.45; *Brasure*, *supra*, 42 Cal.4th at p. 1075). And, like the defendant in *Brasure*, Daniels "is in no way prejudiced by assessment of the [suspended parole revocation] fine, which will become payable only if he actually does begin serving a period of parole and his parole is revoked." (*Ibid*.)

Further, the holding of *McWhorter*, *supra*, 47 Cal.4th 318, where the Supreme Court struck a parole revocation fine where the defendant was sentenced to the death penalty as well as a determinate sentence for first degree burglary does not alter our conclusion. (*Id*. at p. 380.) The court did not articulate the basis for treating the section 1202.45 parole revocation fine before it differently from the section 1202.45 parole revocation fine it upheld in *Brasure*, *supra*, 42 Cal.4th 1037. The only apparent distinction is that the parole

17

revocation fine upheld in *Brasure* was appended to an unstayed determinate sentence, while the parole revocation fine stricken in *McWhorter* was appended to the sentence for the robbery conviction necessarily stayed under section 654, once the death penalty was imposed for the robbery special circumstance. Here, we conclude this case is more like *Brasure* because at least one of Daniels's determinate sentences was not stayed.

DISPOSITION

The judgment is modified to stay Daniels's sentences for counts 1 and 4 under section 654. The judgment is otherwise affirmed. We remand this matter back to the superior court, however, for resentencing consistent with this opinion. After resentencing Daniels, the trial court is directed to prepare an amended abstract of judgment and minute order to reflect Daniels's new sentence and forward a certified copy to the Department of Corrections and Rehabilitation.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

BENKE, J.

18