Filed 7/9/21  P. v. Phakhin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C090053 |
| v. | (Super. Ct. No. 17FE012186) |
| ANGELA PHAKHIN, | |
| Defendant and Appellant. | |

Defendant Angela Phakhin buckled her daughter in a car seat and left her in a car for over nine hours in extreme heat, resulting in the death of her daughter.  A jury found defendant guilty of first degree murder, and the trial court sentenced her to 25 years to life in prison.  Among other things, the trial court also imposed but suspended a $300 parole revocation fine.

Defendant now contends (1) there is insufficient evidence that she intentionally killed her daughter, and (2) the trial court improperly imposed the parole revocation fine. We will affirm the judgment.

1

Defendant was tried for one count of first degree murder (Pen. Code, § 187, subd. (a))[1] under two theories:  (1) premeditated murder and (2) felony murder (torture). At the jury trial, the testimony and evidence, including defendant's testimony, showed that in January 2017 defendant moved to California from Arkansas with Untwan Smith, her boyfriend, and Maiya Phakhin, her three-year-old daughter from another relationship. They came to Sacramento because Smith told defendant he owned a house there, but when this turned out not to be true, they became unhoused and lived out of defendant's car.

In late June 2017, during a heat wave where temperatures reached above 100 degrees, several people encountered the group in various public parking lots.  These witnesses testified to seeing Maiya lying on asphalt without a blanket where she could be hit by a car, looking limp and lifeless from the heat, wearing soiled clothes with multiple layers of urine and feces, and wearing long pants and shirts despite the heat.  Two witnesses heard Maiya crying as if she was hurt.  These witnesses asked defendant if everything was alright, and defendant said Maiya was just throwing a tantrum.

Police and fire fighters were called on numerous occasions to check on Maiya and found her with no muscle tone.  Fire department personnel gave defendant and Smith information about cooling centers but defendant and Smith declined assistance.  The fire department personnel saw Smith treating Maiya more like an object than a child, carrying her limp over his arm like a beach towel with her arms dangling.

On June 26, 2017, defendant and Smith locked Maiya in defendant's car from about 12:00 p.m. to about 3:30 or 4:30 p.m.  Two witnesses saw defendant and Smith near the car that day without Maiya, watching the news on their phones and generally

---

[1] Undesignated statutory references are to the Penal Code.

sitting around the area. When defendant took Maiya out of the car Maiya was very thirsty and had soiled herself. Later that night, other witnesses heard Maiya screaming and sounding terrified. Smith was heard saying, "Would you just shut up."

The following day, June 27, 2017, defendant and Smith locked Maiya in the car for even longer -- from about 9:00 a.m. to 6:30 p.m. They buckled Maiya in her car seat so she couldn't get out of the locked car and closed all but one window, which was cracked only one-fourth to one-half inch. A later test under similar conditions found the interior of the car could have reached 125.5 degrees. Defendant and Smith were again seen milling around the general area of the car without Maiya. Defendant and Smith were described as looking very hot from the summer heat.

Maiya died that day from the heat of the car. Specifically, a forensic pathologist testified the cause of death was probable hyperthermia, consistent with being left in a hot car with a peak temperature of 125.5 degrees, resulting in swelling of the brain and small hemorrhages in the heart. Prior exposures to heat could have exacerbated Maiya's condition and made her more vulnerable to prolonged heat exposure.

On June 28, 2017, a sheriff's deputy found defendant's car facing the wrong way on the side of a road, with Smith in a dirt culvert just off the road. During a search of the vehicle, officers discovered Maiya's body wrapped in a blanket secured with duct tape. Defendant confirmed that Smith was preparing to bury Maiya's body. Defendant explained they wanted to bury the body because Maiya's death could "look like it was plotted. That [it] would look like it was planned."

Defendant testified at trial that she and Smith locked Maiya in the car at the behest of God to exorcise the devil and demons from Maiya. But defendant said she did not want to harm Maiya. At the time of her arrest, defendant told police she could have been wrong about God's intentions and it was her fault Maiya died, adding: "[S]hould I have let her out of the car when I felt that she needed to be out of the car? Yeah. So, you know, I take full responsibility of it." She admitted knowing a hot car is harmful to

3

children, that she was concerned for Maiya's well-being throughout that day, and that the demons could have been exorcised with the car's air conditioning on but defendant and Smith instead turned the car off and rolled up the windows. Witnesses testified that days before Maiya's death, defendant and Smith seemed mentally stable and never mentioned anything about demons or the devil. Defendant also admitted Smith was frustrated by Maiya's behavior and that he threatened to leave defendant because of problems with Maiya. Shortly before the pair prepared to bury Maiya's body, Smith had proposed to defendant and defendant had agreed to marry him.

The jury found defendant guilty of first degree murder under both a theory of premeditated and deliberate murder and under a theory of felony murder based on torture. The trial court sentenced defendant to an indeterminate term of 25 years to life. The court ordered defendant to pay a $300 restitution fine (§ 1202.4, subd. (b)) and imposed but suspended a $300 parole revocation fine (§ 1202.45).

## DISCUSSION

### I

Defendant contends there was insufficient evidence that she had the requisite intent for first degree murder. She asserts the evidence at most establishes she knowingly placed Maiya's life at risk, which is not enough for express malice. She also challenges the evidence supporting the torture finding.

### A

"A verdict of deliberate and premeditated first degree murder requires more than a showing of intent to kill. (§ 189 . . . .) 'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance. [Citations.] 'The process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly . . . ." [Citations.]' [Citation.]" (*People v.*

4

*Koontz* (2002) 27 Cal.4th 1041, 1080.) Our Supreme Court has "found planning activity, preexisting motive, and manner of killing to be relevant, although these factors do not ' "exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." ' " (*People v. Lopez* (2018) 5 Cal.5th 339, 355 (*Lopez*).) Also, a "lack of a discernable rational motive does not preclude a conviction for first degree premeditated murder." (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 202 (*Whisenhunt*).)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)" (*People v. Battle* (2011) 198 Cal.App.4th 50, 61-62.)

A judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. (*People v. Battle, supra*, 198 Cal.App.4th at p. 62.) Thus, when a criminal defendant claims insufficiency of the evidence on a particular element, we presume the evidence of that element was sufficient, and the defendant bears the burden of convincing us otherwise. (*Ibid*.) "To do so, the defendant must present the case to us in a manner consistent with the substantial evidence standard of review[;] [t]hat is, the defendant must set forth in the opening brief all of the material evidence on the disputed element in the light most favorable to the prosecution, and then must persuade us that the evidence cannot reasonably support the jury's verdict." (*Ibid*.)

B

Here, the evidence is sufficient to support the verdict. Smith thought Maiya's tantrums had become a problem, he threatened to leave defendant because of it, and the couple became engaged the morning after Maiya's death, shortly before the attempt to bury the body. Defendant and Smith declined offers of assistance, intentionally and

5

repeatedly put Maiya in circumstances where Maiya was subjected to suffering, trauma and harm, and then escalated such treatment by locking Maiya in the car for over nine hours where temperatures reached well over 100 degrees. Defendant herself appeared to be impacted by the heat and knew that a hot car was harmful to a child. Witnesses saw her milling around the car all day, and defendant admitted she should have let Maiya out of the car when defendant felt Maiya needed to be out of the car, but defendant did not do that. After the death, defendant hoped to bury the body and hide her daughter's death.

The evidence does not suggest temporary neglect. Rather, the record supports a finding of premeditation and deliberation. (See *Whisenhunt, supra*, 44 Cal.4th at pp. 201-202 [the defendant's continuing and escalating acts of abuse showed a premeditated and deliberate intent to eventually kill the victim]; *Lopez, supra*, 5 Cal.5th at p. 355 [same]; *People v. Hovarter* (2008) 44 Cal.4th 983, 1020 [the prolonged manner of taking a person's life affords ample time for the offender to consider the nature of the deadly act]; *People v. Ibarra* (2007) 151 Cal.App.4th 1145, 1152 [the extended period of time showed the defendant acted with coldness, calculation and extreme determination]; *People v. Stewart* (2004) 33 Cal.4th 425, 495 [avoidance of detection was a major aspect of the defendant's planning].) The jury could have reasonably concluded the killing took place over a sufficiently prolonged period to allow defendant to reflect on her actions and intend the result. (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 493.)

Because the jury unanimously found defendant guilty of first degree murder under two theories, and we have concluded there is sufficient evidence to support the theory of premeditation and deliberation, we need not analyze the jury's finding under the theory of felony murder. (*People v. Sandoval* (2015) 62 Cal.4th 394, 424.)

II

Defendant next contends it was error to impose a parole revocation fine because her sentence does not include a period of parole. The People agree. We disagree with both parties.

6

A parole revocation fine under section 1202.45 is imposed in "every case where a person is convicted of a crime and his or her sentence includes a period of parole." (§ 1202.45, subd. (a).) "Under section 1202.45, a trial court has no choice and must impose a parole revocation fine equal to the restitution fine whenever the 'sentence includes a period of parole.' " (*People v. Smith* (2001) 24 Cal.4th 849, 853, italics omitted.) When a defendant is sentenced to state prison, his sentence usually includes a period of parole supervision. (*People v. Preston* (2015) 239 Cal.App.4th 415, 424-425, citing section 3000, subd. (a)(1); see also *People v. Nuckles* (2013) 56 Cal.4th 601, 609.)

The parties rely on *People v. Oganesyan* (1999) 70 Cal.App.4th 1178 and *People v. Brasure* (2008) 42 Cal.4th 1037 (*Brasure*). But those cases are inapposite. In *Oganesyan*, the defendant was sentenced to life in prison without the possibility of parole for special circumstances first degree murder with a firearm enhancement, and a second sentence of 15 years to life for second degree murder plus an additional firearm enhancement. (*Oganesyan,* at pp. 1183-1184.) The court noted the purpose of the fine was to recoup costs from parole and the legislature could not have "intended that its cost recoupment purposes were to apply under such an extremely limited set of circumstances" such as "where a special circumstances murderer is granted clemency and ultimately paroled." (*Id*. at pp. 1184-1185.) Thus, the court found that since "the sentence does not presently allow for parole and there is no evidence it ever will, no additional restitution fine must be imposed." (*Id.* at p. 1185.)

In *Brasure*, the defendant had been sentenced to death in addition to several determinate prison terms under section 1170, subdivision (h). The California Supreme Court held that because section 3000, subdivision (a)(1) required a period of parole for a determinate term, section 1202.45, subdivision (a) applied. (*Brasure*, *supra*, 42 Cal.4th at p. 1075.) The court said the suspended parole revocation fine was required even if the defendant was "unlikely ever to serve any part of the parole period on his determinate sentence." (*Ibid*.)

7

Here, defendant was sentenced to 25 years to life, not life without the possibility of parole. Because her sentence does not foreclose the possibility of parole, the trial court properly imposed the parole revocation fine. As in *Brasure*, defendant "is in no way prejudiced by assessment of the [suspended parole revocation] fine, which will become payable only if [she] actually does begin serving a period of parole and [her] parole is revoked." (*Brasure, supra*, 42 Cal.4th at p. 1075.)

DISPOSITION

The judgment is affirmed.

/S/
MAURO, J.

We concur:


/S/
RAYE, P. J.


/S/
MURRAY, J.

8