Filed 1/23/25  P. v. Gallardo CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | G062981 |
|       v. | (Super. Ct. No. 16WF2497) |
| ROBERTO RAFAEL SAAVEDRA GALLARDO, | O P I N I O N |
|     Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge. Affirmed as modified.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Roberto Rafael Saavedra Gallardo (defendant) of one count of first degree murder (Pen. Code, § 187, subd. (a); count 1) and found true the special circumstance of murder for financial gain (§ 190.2, subd. (a)(1)).[1] The court sentenced defendant to life without the possibility of parole.

Defendant raises two issues on appeal. First, he contends the court incorrectly instructed the jury on motive as it pertained to the financial gain special circumstance. Second, he argues the court imposed an unauthorized parole revocation fine. We agree with defendant's latter contention and modify the judgment by striking the $300 parole revocation fine. In all other respects, the judgment is affirmed.

## FACTS[2]

Defendant met Olga Vasquez-Collazos (Olga) in Peru. Defendant and Olga dated, but Olga ultimately married another man, Adrian Zapata (Adrian). Adrian owned a condominium in Peru and lived in the United States. After their marriage, Olga remained in Peru, where she had an ongoing affair with defendant.

In 2013, Olga and her two sons moved from Peru to Westminster to be with Adrian. About a year later, defendant moved from Peru to Van Nuys and continued to see Olga, who communicated with him via a secret cell phone. In May 2014, two months after defendant arrived in California, Adrian was murdered in his apartment.

---

[1] All further statutory references are to the Penal Code.

[2] Because this appeal concerns jury instructions and a parole revocation fine, we need not summarize all the facts in detail.

According to phone records, it appeared defendant travelled from Van Nuys to Orange County the night before the murder and communicated with Olga that evening. The next morning, defendant and Olga continued to communicate, and Adrian was asleep in his bed. Olga left Adrian's apartment around 8:00 a.m. and took her children to school, but defendant remained near Adrian's apartment. Around 8:45 a.m., defendant and Olga were both near the UCI Medical Center, and by 9:13 a.m., defendant was heading back to Van Nuys.

Around 10:22 a.m., the police were dispatched to Adrian's apartment, where they found him dead in his bed. Adrian had been repeatedly stabbed and bludgeoned around the head. Investigators suspected the scene had been staged to look as if the apartment had been burglarized.

Defendant and Olga continued their relationship after the murder. In her conversations with the police, Olga discussed recovering funds from Adrian's life insurance, social security, and 401(k) account. Around six months after the murder, the police told Olga they found defendant's DNA on Adrian's body even though this was not true. Olga seemed surprised and denied seeing defendant on the day of the murder. She also falsely claimed she did not know where defendant was or how to contact him. In 2017, authorities arrested defendant in Peru.[3]

---

[3] Authorities also arrested Olga, who was separately tried and convicted of Adrian's murder. In her case, the jury found the financial gain special circumstance not true. (See *People v. Vasquez-Collazos* (Nov. 10, 2022, G060525) [nonpub. opn.].)

DISCUSSION

Defendant claims the court erred by providing jury instructions that essentially relieved the prosecution of its burden to prove the murder was motivated by financial gain. According to defendant, the error was prejudicial and violated his constitutional rights to due process and a jury trial. Defendant also argues the court improperly imposed a $300 parole revocation fine. For the reasons below, we agree the court erred by imposing the parole revocation fine but disagree with defendant's remaining contentions.

I.

JURY INSTRUCTIONS REGARDING THE FINANCIAL GAIN SPECIAL CIRCUMSTANCE

A. *Relevant Background*

Two jury instructions are central to the instant appeal: CALCRIM Nos. 370 and 720. As given to the jury, CALCRIM No. 370 stated: "The People are not required to prove that the defendant had a motive to commit the crime charged. In reaching your verdict you may, however, consider whether the defendant had a motive. [¶] *Having a motive may be a factor tending to show* that the defendant is guilty or *a special circumstance is true. Not having a motive may be a factor tending to show* the defendant is not guilty or *a special circumstance is not true*." (Italics added.)

The court also instructed the jury with CALCRIM No. 720, which stated: "The defendant is charged with the special circumstance of murder for financial gain in violation of Penal Code section 190.2(a)(1). [¶] To prove this special circumstance is true, the People must prove that: [¶] 1. The defendant intended to kill; [¶] AND [¶] 2. *The killing was carried out for financial gain*." (Italics added.)

Defendant argues the court erred by providing CALCRIM No. 370 because it improperly relieved the prosecution of its burden to prove the murder was motivated by financial gain. According to defendant, the instruction effectively told the jury that motive was merely a "factor" rather than an element of the financial gain special circumstance. Although defendant did not challenge the instruction in the trial court proceedings, we address the merits because defendant claims the instruction violated his constitutional rights.[4] (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1164.)

## B. *Applicable Law and Standard of Review*

The financial gain special circumstance requires the murder to have been "carried out for financial gain." (§ 190.2, subd. (a)(1).) "Carried out 'for' financial gain implies motive." (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1178.) In cases involving crimes that require a particular motive, some courts have found CALCRIM No. 370 "effectively 'remove[s] the mental state element' from the jury's consideration." (*People v. Valenti*, *supra*, 243 Cal.App.4th at p. 1165.)

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) In so doing, "'"we must assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given."'" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 915.) "'[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.'" (*Id.* at p. 906.) "[W]e inquire whether there is a reasonable likelihood that the jury misunderstood or misapplied the instruction in a manner that violates the

_____

[4] Because defendant did not forfeit the issue, we need not address his argument that his counsel was ineffective for failing to object below.

Constitution." (*Ibid*.) When conducting our inquiry, "'[a] single instruction is not viewed in isolation, and the ultimate decision on whether a specific jury instruction is correct and adequate is determined by consideration of the entire instructions given to the jury.'" (*Ibid*.)

## C. Harmless Error

Defendant argues any prejudice resulting from the instructional error must be evaluated under the "beyond a reasonable doubt standard" of *Chapman v. California* (1967) 386 U.S. 18, 24. The People suggest any error can be evaluated under *People v. Watson* (1956) 46 Cal.2d 818, 836. Assuming the court erred by providing CALCRIM No. 370, any error was not prejudicial under either standard.

In closing argument, the prosecutor told the jury she had the burden of proving "the killing was carried out for financial gain" to establish the financial gain special circumstance. The prosecutor elaborated: "The law does not require financial gain to be the dominant, substantial, or significant motive. Just that it was a motive. [¶] The law does not require that the defendant actually get any money or property. It's just that that was the plan. The plan was to get the condo and the other money so the two of them could live happily ever after." By making these statements, the prosecutor clearly told the jury that the killing had to be carried out for financial gain and clarified any possible confusion caused by CALCRIM No. 370. In other words, the prosecutor resolved any ambiguity regarding the motive issue in defendant's favor.

Defendant claims the prosecutor's closing argument was not definitive because the prosecutor, at one point, stated: "People are not required to prove that there's a motive, but there's motive all over here." It appears this statement was made in regards to the murder charge as opposed

6

to the financial gain special circumstance. After making the above statement, the prosecutor summarized the law regarding the financial gain special circumstance and specifically stated she had the burden of proving "the killing was carried out for financial gain." The prosecutor also emphasized the evidence suggesting defendant's financial motive. For example, after the murder, defendant contacted others to help Olga "get . . . [Adrian's] condo in Peru" and to recover funds from Adrian's social security. The prosecutor plainly argued the primary motive for the murder was for defendant and Olga to be together while the secondary motive was financial. The prosecutor stated: "There's a secondary motive, the financial gain. You can get that nice penthouse condo in Peru, the 401(k), and the life insurance, and as you know, that's exactly what she set about to do." Considering the prosecutor's argument and the entire instructions given to the jury, any error was not prejudicial and does not require reversal. (*People v. Nelson* (2016) 1 Cal.5th 513, 545 [finding no prejudice where the parties argued a correct interpretation of the jury instructions]; *People v. Mills* (2012) 55 Cal.4th 663, 680 ["[W]e do not presume the jury blindly followed an instruction that was inconsistent with other correct instructions and the arguments of counsel. Rather, we view the record as a whole, and consider the instructions in context."].)

II.

PAROLE REVOCATION FINE

Defendant argues, and the People agree, that a parole revocation fine of $300 was improperly imposed on defendant pursuant to section 1202.45. This fine was imposed in a minute order, the abstract of judgment, and by the court on the record at the sentencing hearing. We agree with the parties' view of the issue. Because defendant was sentenced to life in prison

7

without the possibility of parole, section 1202.45 is inapplicable to his sentence. (*People v. McWhorter* (2009) 47 Cal.4th 318, 380; *People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1184–1185.)

DISPOSITION

The judgment is modified by striking the $300 parole revocation fine. The court is instructed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

GOODING, J.

8